Filed 3/2/23  Elsner v. San Diego Gas & Electric Co. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| LINDA KAY ELSNER et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> SAN DIEGO GAS & ELECTRIC COMPANY et al., <br><br> Defendants and Respondents. | D080055 <br><br><br> (Super. Ct. No. 37-2018-00041012-CU-PO-CTL) |


APPEAL from a judgment of the Superior Court of San Diego County, Richard S. Whitney, Judge.  Affirmed.

Abir Cohen Treyzon Salo, Boris Treyzon, Anna L. Knafo, and Brianna Franco for Plaintiffs and Appellants.

Higgs Fletcher & Mack, John Morris, William M. Low, Rachel M. Garrard, and Steven Brunolli for Defendants and Respondents.


Linda Kay Elsner and Kelsey Carson Elsner (collectively the Elsners) appeal the summary judgment in their action against San Diego Gas & Electric Company (SDG&E) and George William Delucas III (collectively defendants) for the wrongful death of Rohn Elsner, Linda's husband and

Kelsey's father. Delucas drove an SDG&E truck over Rohn after he crashed his motorcycle into an embankment and landed in Delucas's lane of traffic. The trial court ruled the sudden emergency doctrine barred the action. We agree and affirm.

## I.

## BACKGROUND

### A. *Fatal Accident*

As Rohn was riding his motorcycle in the northbound (uphill) lane of Wildcat Canyon Road one afternoon, Delucas was driving an SDG&E truck in the southbound (downhill) lane. Rohn crossed over the double solid yellow lines into the southbound lane to pass two vehicles. When Rohn crossed the lines a third time to pass another vehicle, he collided with the vehicle, lost control of the motorcycle, crossed over the southbound lane, and struck the adjacent embankment. Rohn landed in the southbound lane, and his motorcycle landed in the northbound lane. Delucas arrived at the scene from the opposite direction after driving around a blind curve. He saw the motorcycle and then Rohn, but could not stop the truck and drove over him. Rohn died at the scene.

### B. *Pleadings*

The Elsners filed a complaint against defendants for wrongful death. They alleged Delucas negligently drove the SDG&E truck at an unsafe speed, collided with Rohn, and caused his death. The Elsners alleged SDG&E was liable as the employer of Delucas, who operated the truck in the course of his employment.

Defendants answered the complaint with a general denial and many affirmative defenses. As one such defense, they alleged: "The circumstances of the incident presented a sudden and unexpected emergency, not caused by

2

Defendants, that placed someone in actual or apparent danger of immediate injury. Defendants acted as reasonably careful persons would have conducted themselves in similar circumstances."

C.     *Motion for Summary Judgment*

Defendants moved for summary judgment (Code Civ. Proc., § 437c) on the basis of the sudden emergency doctrine. They argued Delucas encountered a sudden and unexpected emergency, namely, Rohn's presence in Delucas's lane of traffic; Delucas did not cause the emergency; and he acted reasonably by trying to stop the truck and to avoid running over Rohn by passing over him between the wheels instead of swerving to his right into the steep embankment or swerving to his left into the lane of oncoming traffic.

In support of the motion, Delucas submitted a declaration describing Wildcat Canyon Road and his drive down the road in a work truck after completing a job for his employer, SDG&E, on the afternoon of the fatal accident. While traveling southbound at approximately 40 miles per hour (which was 10 miles per hour below the speed limit), with the engine brake engaged to control downhill speed, Delucas encountered a series of blind curves and slowed to maneuver through them. As he came out of one of the curves, he "suddenly and unexpectedly" saw a motorcycle overturned and sliding on the road from his lane into the opposite lane and stepped on the brake. Delucas "immediately" saw Rohn sliding from the embankment into the southbound lane and continued to brake. Delucas could not stop the truck in time to avoid Rohn and attempted to pass over him without running him over with the tires. Delucas could not swerve to the right, because a rock embankment bordered the west side of the southbound lane; and he chose not to swerve to the left, because he would have crossed into the oncoming traffic

3

lane and possibly gone over a steep cliff. He "quickly and suddenly decided the best and safest course of action was to bring the truck to a stop and, while doing so, attempt to straddle [Rohn] given the space between the bottom of the truck and the roadway." Defendants also submitted a map of Wildcat Canyon Road; photographs of the accident scene; excerpts of transcripts of depositions of witnesses to the accident; discovery responses from the Elsners; and other documents.

The Elsners opposed the summary judgment motion. They argued the sudden emergency doctrine did not defeat their action as a matter of law, because Delucas's negligent driving at too high a speed through blind curves contributed to the emergency and because there were triable issues of fact on whether he responded to the emergency as a reasonably prudent commercial truck driver would have. The Elsners submitted declarations from two expert witnesses, Alvin Lowi III, an expert on accident reconstruction, and V. Paul Herbert, an expert on commercial motor vehicle safety. Lowi stated that Delucas could have stopped his truck without coming into contact with Rohn because Delucas could have seen the motorcycle for 300 feet and needed less than that distance to stop the truck whether he was traveling 25 or 40 miles per hour. Herbert stated that Delucas breached the standard of care by failing to follow the posted advisory speed of 25 miles per hour while driving through the blind curves on Wildcat Canyon Road and by failing to look ahead through the distance that would be traveled in 12 to 15 seconds in anticipation of potential hazards in the road. The Elsners also submitted photographs of the SDG&E truck involved in the accident; excerpts of transcripts of depositions of witnesses to the accident; a photograph of the sign advising drivers to travel no more than 25 miles per hour through the blind curve; and a copy of the traffic collision report of the accident.

4

In reply, defendants again argued Delucas did not contribute to the emergency and acted reasonably in response to it. They also objected that the opinions of the experts retained by the Elsners lacked foundation and were otherwise inadmissible.

After holding a hearing and taking the matter under submission, the trial court granted the motion for summary judgment. The court overruled defendants' written objections to the Elsners' experts' declarations, but agreed with the argument of defendants' counsel at the hearing that "Lowi's declaration lacks foundation and therefore his opinions as to SDG&E's fault are largely without merit." The court entered a judgment in favor of defendants and against the Elsners.

II.

DISCUSSION

The Elsners contend the trial court erred by granting the motion for summary judgment because there are triable issues of material fact on whether the sudden emergency doctrine shields defendants from liability for Rohn's death. After setting out the standard of review and the sudden emergency doctrine, we shall address each of the Elsners' claims of error and conclude none has merit.

A.     *Standard of Review*

We review a trial court's decision to grant a motion for summary judgment de novo. (*Gonzalez v. Mathis* (2021) 12 Cal.5th 29, 39; *Shiver v. Laramee* (2018) 24 Cal.App.5th 395, 400 (*Shiver*).) When the defendant relies on an affirmative defense as the basis for the motion, the defendant has the burden to produce evidence to support each element of the defense; and if the defendant does so, the burden shifts to the plaintiff to produce evidence that would allow a reasonable trier of fact to reject the defense. (*Mayes v. La*

5

*Sierra University* (2022) 73 Cal.App.5th 686, 696-697; *Shiver*, at p. 400.) In reviewing the trial court's ruling, we determine whether there is a triable issue of material fact by considering all the evidence presented on the motion, except that to which objections were sustained, liberally construing the plaintiff's evidence and resolving any evidentiary conflicts, doubts, or inferences in plaintiff's favor. (*Gonzalez*, at p. 39; *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767, 768; *Shiver*, at p. 400.) If there is a triable issue of material fact, we reverse; if there is not and the defendant is entitled to judgment under the law, we affirm. (Code Civ. Proc., § 437c, subd. (c); *Mubanda v. City of Santa Barbara* (2022) 74 Cal.App.5th 256, 261; *EHP Glendale, LLC v. County of Los Angeles* (2011) 193 Cal.App.4th 262, 273-274.)

B.    *Sudden Emergency Doctrine*

Defendants moved for summary judgment based on the sudden emergency doctrine. That doctrine, which is "also known as the imminent peril doctrine, shields a defendant from liability in a negligence action." (*Shiver*, *supra*, 24 Cal.App.5th at p. 397.) "[U]nder the cases and the authorities, a person who, without negligence on his part, is suddenly and unexpectedly confronted with peril, arising from either the actual presence, or the appearance, of imminent danger to himself or to others, is not expected nor required to use the same judgment and prudence that is required of him in the exercise of ordinary care in calmer and more deliberate moments." (*Leo v. Dunham* (1953) 41 Cal.2d 712, 714 (*Leo*).) " 'The test is whether the [person] took one of the courses of action which a standard [person] in that emergency might have taken, and such a course is not negligent even though it led to an injury which might have been prevented by adopting an alternative course of action.' " (*Schultz v. Mathias* (1970) 3 Cal.App.3d 904, 912-913 (*Schultz*).) Thus, to obtain summary judgment, defendants had to

6

show the evidence was undisputed that:  (1) " 'there was a sudden and unexpected emergency situation in which someone was in actual or apparent danger of immediate injury' "; (2) Delucas " 'did not cause the emergency' "; and (3) he " 'acted as a reasonably careful person would have acted in similar circumstances, even if it appears later that a different course of action would have been safer.' "  (*Shiver*, at p. 399, quoting CACI No. 452.)

C.    *Claims of Error*

1.    *Susceptibility to Resolution by Summary Judgment Motion*

The Elsners initially contend application of the sudden emergency doctrine raises issues of fact that should be decided by a jury at a trial, not by a court on a summary judgment motion.  "*Ordinarily* whether a person was unexpectedly confronted with an emergency and, whether being so confronted, [the person's] choice of alternatives to avoid disaster was one which a reasonable [person] might have taken under the circumstances are questions for the jury."  (*Schultz*, *supra*, 3 Cal.App.3d at p. 913, italics added.)  Likewise, "*ordinarily*, whether a person has been suddenly confronted with imminent peril, or whether such peril was brought about through [the person's] own negligence, is a question of fact for the jury."  (*Warren v. Sullivan* (1961) 188 Cal.App.2d 150, 154, italics added.)  In some cases, however, "the evidence establishes *as a matter of law* that defendant, through no fault of his own, was suddenly and unexpectedly confronted with an emergency and had no time for deliberate and considered choice of alternatives."  (*Schultz*, at p. 913, italics added.)  In such "rare" cases, the sudden emergency doctrine "applies at a summary judgment motion." (*Shiver*, *supra*, 24 Cal.App.5th at p. 397; see *Abdulkadhim v. Wu* (2020) 53 Cal.App.5th 298 (*Abdulkadhim*) [affirming summary judgment based on sudden emergency doctrine].)  We therefore reject the Elsners' suggestion

7

that the applicability of the sudden emergency doctrine could not be decided by motion for summary judgment, and turn to their contentions that defendants did not meet their burden to establish the absence of any triable issue of material fact.

2.    *Need for Expert Testimony*

The Elsners next claim the trial court should have denied the motion for summary judgment because defendants did not meet their initial burden to show Delucas operated the SDG&E truck in a reasonably prudent manner. The Elsners contend that expert testimony on the standard of care was required because Delucas was driving a 13-ton commercial truck when he ran over Rohn and such drivers require special training and licensing. We disagree.

Defendants did not have to establish the standard of care for commercial truck drivers as part of their initial burden on the summary judgment motion. Having moved on the basis of an affirmative defense, their burden was to establish each element of the defense. (*Shiver*, *supra*, 24 Cal.App.5th at p. 400.) Defendants thus had to introduce evidence to establish that Delucas: (1) encountered a sudden and unexpected emergency in which somebody was or appeared to be in danger of immediate injury; (2) did not cause the emergency; and (3) acted as a reasonably careful person would have acted in similar circumstances. (*Id*. at p. 399.) Defendants did so by submitting deposition excerpts and other documents describing Rohn's ride up Wildcat Canyon Road on his motorcycle and the collision that caused him to lose control of the motorcycle and land in the opposite lane of traffic, and the declaration from Delucas describing his drive down Wildcat Canyon Road and what he did when he encountered Rohn lying in his (Delucas's) lane of traffic. There was no need for expert testimony on the standard of care to

8

establish any of these matters, because such testimony is not required when the subject is not "sufficiently beyond common experience." (Evid. Code, § 801, subd. (a); see *Allgoewer v. City of Tracy* (2012) 207 Cal.App.4th 755, 761-762; *Raven's Cove Townhomes, Inc. v. Knuppe Development Co.* (1981) 114 Cal.App.3d 783, 796-797.)[1] "When truckers share the public road with other motorists they are subject to the same standard of care as all motorists. That standard of care is not judged according to custom in the trucking business." (*Shuff v. Irwindale Trucking Co.* (1976) 62 Cal.App.3d 180, 188.) Rather, Delucas's actions were to be judged against those of a " 'reasonably careful person' " facing the emergency he faced. (*Shiver*, at p. 401, quoting CACI No. 452; see *Schultz*, *supra*, 3 Cal.App.3d at p. 912 [test is whether defendant " 'took one of the courses of action which a standard [person] in that emergency might have taken' "]; *Gamalia v. Badillo* (1942) 53 Cal.App.2d 375, 378 ["The test is, did [the defendant] act as a reasonably prudent [person] would act under similar circumstances?"].) The evidence defendants submitted in support of the motion permitted that judgment.

3. *Triable Issues of Material Fact on Elements of Defense*

As their last claim of error, the Elsners argue the motion for summary judgment should have been denied because they raised triable issues of fact on two of the elements of the sudden emergency doctrine. They contend

---

[1] Even if the Elsners are correct that Delucas's driving of a 13-ton truck qualifies him as a "professional," i.e., one who in the practice of a trade uses skills or knowledge most others do not have (*Evans v. Hood Corp.* (2016) 5 Cal.App.5th 1022, 1050), the cases they cite acknowledge that expert testimony is not required in a negligence action against a professional if "the circumstances fall within the realm of common knowledge" (*Sanchez v. Brooke* (2012) 204 Cal.App.4th 126, 138) or if a "lay person's common knowledge includes the conduct required by the particular circumstances" (*Unigard Ins. Group v. O'Flaherty & Belgum* (1995) 38 Cal.App.4th 1229, 1239).

Herbert's opinion that Delucas breached the standard of care by driving too fast through the blind curves "put into dispute Delucas' claim that he did not contribute to the emergency and acted reasonably when confronted with the emergency." The Elsners also contend Lowi's opinion that Delucas had sufficient time after Rohn's motorcycle came into view to stop the truck before running over Rohn had sufficient foundation, was confirmed by eyewitness testimony that Delucas did nothing to avoid running over Rohn, and was sufficient to create triable issues of fact on whether Delucas caused the emergency and reacted reasonably to it. We find these contentions unpersuasive.

There are no triable issues of fact on whether Delucas caused the emergency. "An emergency or peril under the sudden emergency or imminent peril doctrine is a set of facts presented to the person alleged to have been negligent." (*Abdulkadhim*, *supra*, 53 Cal.App.5th at p. 302.) Thus, "the only relevant emergency is the one [Delucas] faced." (*Ibid.*) That emergency was Rohn's unexpected presence in the travel path as Delucas drove his work truck out of a blind curve on Wildcat Canyon Road. A cause of an emergency under the sudden emergency doctrine is an act or omission that is "a substantial factor in bringing about the emergency." (*Shiver*, *supra*, 24 Cal.App.5th at p. 401.) The sole cause of Rohn's lying in Delucas's travel path was Rohn's loss of control of the motorcycle after hitting a car he was illegally trying to pass. (See Veh. Code, § 21460, subd. (a) [prohibiting driving to left of double solid yellow lines].) Nothing Delucas did on the other side of the blind curve, including the failure to slow his truck to 25 miles per hour and to scan for hazards 12 to 15 seconds ahead for which the Elsners' experts faulted Delucas, was a substantial factor in bringing about the emergency. But for his illegal attempt to pass a car, Rohn would not have

10

ended up lying behind a blind curve in Delucas's travel path, and no emergency would have arisen. (Cf. *Shiver*, at p. 401 [defendant driver of truck that rear-ended plaintiff's car did not cause emergency presented by sudden and unexpected braking of car ahead of plaintiff, which prevented plaintiff's safe merge in front of defendant]; *Schultz*, 3 Cal.App.3d at pp. 908, 913 [defendant driver did not cause emergency when driver approaching from opposite direction swerved his car into defendant's travel lane at distance traversed in three or four seconds].)[2]

---

[2] The dissenting opinion defines the sudden emergency Delucas confronted as "a downed motorcyclist in his path of travel, *and that he was unable to stop in time*." (Dis. opn., at p. 2.) The dissent then goes on to conclude Delucas is not entitled to summary judgment based on the sudden emergency doctrine because, in its author's view, there are triable issues of fact on whether his negligent driving before he encountered the downed motorcyclist (i.e., Rohn) contributed to the sudden emergency as the dissent has defined it. In finding such triable issues of fact, the dissent relies primarily on the declarations submitted by the Elsners' retained experts for their opinions that had Delucas been driving slower and more attentively scanning the road ahead for potential hazards, he could have spotted Rohn's motorcycle in sufficient time to stop his truck before running over Rohn. We disagree with the dissent's definition of the sudden emergency, which improperly includes Delucas's response to the emergency. We also disagree with the dissent's conclusion the experts' declarations were sufficient to raise a triable issue of fact on whether Delucas contributed to the sudden emergency. As we explain later, the experts' opinions do not constitute substantial evidence from which a reasonable trier of fact could conclude Delucas could have seen Rohn's motorcycle in time to stop his truck before encountering Rohn in his travel path. (See pp. 13-18, *post*.) Without such evidence, the Elsners could not defeat the summary judgment motion. (*Granadino v. Wells Fargo Bank, N.A.* (2015) 236 Cal.App.4th 411, 415; see *Leslie G. v. Perry & Associates* (1996) 43 Cal.App.4th 472, 487 [expert may reach conclusion on matter beyond common experience, but only " 'on the basis of the established facts' " and " '*may not himself create the facts upon which the conclusion is based*' "].)

There are also no triable issues of fact on whether Delucas acted as a reasonably careful person in response to the emergency that Rohn caused. The declaration Delucas submitted in support of the summary judgment motion satisfied defendants' initial burden on the motion. Delucas stated that as he was driving southbound on Wildcat Canyon Road, he came upon a rightward curve that he "could not see around . . . due to the sharp angle of the curve, the rock wall embankment on the west side of the road, and the downward slope of the road." As he rounded the curve, he "suddenly and unexpectedly" spotted a motorcycle sliding across his lane of travel, "pressed the brake pedal as hard as [he] could," and "[i]mmediately thereafter" saw Rohn sliding across the lane. Because Delucas could not stop the truck before he arrived at Rohn's location, could not veer to the right due to the steep embankment, and did not want to veer to the left into the lane of oncoming traffic, he "quickly and suddenly decided the best and safest course of action was to bring the truck to a stop and, while doing so, attempt to straddle [Rohn] given the space between the bottom of the truck and the roadway." Delucas attached to his declaration photographs depicting the curve he rounded just before coming upon Rohn and his motorcycle, Rohn and his motorcycle lying in the road, and the SDG&E truck. This evidence established a prima facie case that in choosing the above-described course of action in response to the sudden and unexpected presence of Rohn lying in the path of travel, Delucas acted as a reasonably careful person would have acted in similar circumstances. (Cf. *Shiver*, *supra*, 24 Cal.App.5th at pp. 399, 401 [defendant driver acted as reasonably careful person by braking and sounding horn in response to other driver's sudden stop on freeway]; *Schultz*, *supra*, 3 Cal.App.3d at pp. 908, 913 [defendant driver took course of action reasonable person might have taken by braking and veering into opposite

12

lane of traffic when other driver suddenly veered from that lane into defendant's].)

The burden then shifted to the Elsners to submit substantial evidence from which a reasonable trier of fact could conclude that Delucas did not act as a reasonably careful person in response to the emergency. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850; *Shiver, supra,* 24 Cal.App.5th at p. 400; *Schultz, supra,* 3 Cal.App.3d at p. 913.) They contend they met that burden by submitting declarations from their experts and excerpts from the transcripts of the depositions of two eyewitnesses. As we shall explain, those submissions were insufficient to raise a triable issue of material fact.

We first turn to the declaration of Herbert, the Elsners' expert on commercial motor vehicle safety. Herbert stated that Delucas breached the standard of care by failing to slow the truck to 25 miles per hour and to scan 12 to 15 seconds ahead for potential hazards as he traveled around the blind curve and that these breaches caused or contributed to Rohn's death. These breaches, however, concern the conduct of Delucas *before he encountered the emergency*. "The decisive factor here is the time when [Delucas] knew, or should have known, that an accident would occur unless preventive steps were taken." (*Leo, supra,* 41 Cal.2d at p. 714.) Herbert said nothing about the reasonableness of the conduct of Delucas *after he suddenly and unexpectedly came upon Rohn lying in the road*, the time when Delucas knew or should have known he needed to do something to avoid running over Rohn. Herbert instead implied, but did not state, that had Delucas been traveling slower and paying closer attention to the road ahead, he could have spotted Rohn in time to avoid fatally running him over. An unstated and unexplained factual assumption underlying Herbert's conclusion that

13

Delucas caused Rohn's death is therefore that had Delucas not been traveling faster than 25 miles per hour when he first saw Rohn, there would have been sufficient space between the truck and Rohn that Delucas could have brought the truck to a stop before reaching Rohn. But Herbert stated no facts supporting this key assumption. He "simply assumed causation from the fact of [Rohn's] death. An expert's opinion that something is true if certain assumed facts are true, without any foundation for concluding those assumed facts exist, has no evidentiary value." (*Wicks v. Antelope Valley Healthcare Dist.* (2020) 49 Cal.App.5th 866, 881-882 (*Wicks*).)

Another problem with Herbert's declaration is his erroneous assumption that Delucas had a duty to leave " 'a proper space cushion' " (*Shiver*, *supra*, 24 Cal.App.5th at p. 402) between his truck and "a downed motorcycle and motorcyclist" that may have lain in Delucas's travel path behind a blind curve as he drove down Wildcat Canyon Road. " 'The general rule is that every person has a right to presume that every other person will perform his duty and obey the law, and in the absence of reasonable ground to think otherwise it is not negligence to assume that he is not exposed to danger which comes to him only from violation of law or duty by such other person.' " (*Leo*, *supra*, 41 Cal.2d at p. 715; accord, *Shiver*, at p. 402; see *Porter v. California Jockey Club, Inc.* (1955) 134 Cal.App.2d 158, 160 ["It is axiomatic that in the absence of conduct to put him on notice to the contrary a person is entitled to assume that others will not act negligently or unlawfully."].) Delucas was exposed to danger because Rohn illegally tried to pass a car by crossing over the double solid yellow lines at a blind curve (Veh. Code, §§ 21460, subd. (a), 21752, subd. (a)), hit the car, lost control of his motorcycle, and landed in Delucas's travel path. "Thus, based on the Vehicle Code, a reasonable person in [Delucas's] position could expect that [Rohn]

14

would follow the law and [not enter Delucas's lane of travel]." (*Shiver*, at p. 402 [rejecting "space cushion" theory when injured party violated Veh. Code in causing accident].) "An expert's opinion that assumes an incorrect legal theory cannot constitute substantial evidence." (*Corrales v. Corrales* (2011) 198 Cal.App.4th 221, 226.) Herbert's declaration therefore was insufficient to create a triable issue of material fact on whether Delucas acted as a reasonably careful person in response to the sudden emergency.

We turn next to the declaration of Lowi, the Elsners' expert on accident reconstruction. The parties dispute whether the trial court excluded the declaration for lack of foundation or whether it admitted the declaration but disregarded Lowi's opinions for lack of merit. In its minute order granting the motion for summary judgment, the trial court identified defendants' objections to Lowi's declaration by number and overruled each one. Five of those objections included lack of foundation. The minute order also quoted an argument defendants' counsel had made at the hearing that there was "no evidentiary support" for Lowi's opinion that the 300 feet between the truck and the motorcycle when it first came into Delucas's line of sight was enough distance for Delucas to stop the truck before contacting Rohn. The court stated it "agree[d]" with the argument that Lowi's "declaration lacks foundation and therefore his opinions as to SDG&E's fault are largely without merit." Although this statement could be read to sustain an objection based on lack of foundation, we think a better reading of the minute order is that the court admitted Lowi's declaration, but found his opinion about the stopping distance lacked a sufficient evidentiary basis to create a triable issue of material fact that would require denial of the motion for summary judgment. We therefore proceed to determine whether the declaration was sufficient in that regard.

15

Lowi stated the "accident was avoidable by Delucas" whether he was traveling 40 miles per hour (as Delucas stated in his declaration) or 25 miles per hour (the posted advisory speed limit) because he could have seen Rohn's motorcycle "for more than approximately 300 feet" and could have stopped the truck in less distance at either speed. Lowi based this conclusion "on an analysis of the 3D terrain scan, 3D model of the subject truck, [his] inspection of the accident site approaching in the southbound direction, . . . the reconstructed position of the Elsner motorcycle," and "an assumed Perception-Reaction time of 1.5 seconds." Lowi, however, did not identify the locations of the SDG&E truck and Rohn's motorcycle when the motorcycle first came into Delucas's line of sight; state how he determined the locations; explain how he reconstructed the position of the motorcycle; state why he assumed a perception-reaction time of 1.5 seconds; identify the formula he used to calculate the stopping distance for the truck; state what values he plugged into that formula; or explain how he determined those values. "An expert's opinion rendered without a reasoned explanation of why the underlying facts lead to the ultimate conclusion has no evidentiary value because an expert opinion is worth no more than the reasons and facts on which it is based." (*Wicks*, *supra*, 49 Cal.App.5th at p. 881; accord, *Shiver*, *supra*, 24 Cal.App.5th at p. 403.)

Another problem with Lowi's declaration is that the evidence in the record about the line of sight contradicts his assertion that Delucas could see Rohn's motorcycle from 300 feet away. Delucas stated in his declaration that he "could not see around the rightward curve," and when he rounded the curve he "suddenly and unexpectedly" saw Rohn's motorcycle and "immediately" saw Rohn. At his deposition, Delucas confirmed that as he rounded the curve, Rohn "was in front sliding to [the truck] as [Delucas] was

16

approaching him. So there was no time to come to a full stop before [he] got to [Rohn]." Ryan Valverde, the driver of the car Rohn hit, testified at his deposition that the location of the accident was "a blind curve" and "[t]here's not a line of sight for the road up on Wildcat Canyon." Valverde further testified that after Rohn landed in the road, "instantaneously the SDG&E truck ran over [him]." Michaelene Rojas, a passenger in one of the cars Rohn had passed, testified at her deposition that there "was no way that truck could have missed" Rohn, "[b]ecause he was in the middle of the lane," and Rojas "wouldn't have thought that [Delucas] had time to swerve." The traffic collision report states Rohn "was ejected onto the roadway directly in front of [Delucas] and his vehicle." Lowi stated in his declaration that he reviewed these materials, but identified no testimony or other evidence that Delucas could have seen Rohn or the motorcycle from 300 feet away. Where, as here, "the expert's opinion is not based on facts otherwise proved or if the opinion assumes facts contrary to the evidence, 'it cannot rise to the dignity of substantial evidence.' " (*Atkins v. City of Los Angeles* (2017) 8 Cal.App.5th 696, 740; see *Hyatt v. Sierra Boat Co.* (1978) 79 Cal.App.3d 325, 338 ["an expert's assumption of facts contrary to the proof destroys the opinion"].)

The Elsners insist that "[f]or purposes of defendants' summary judgment motion, Lowi's declaration must be liberally construed, and the facts and opinions therein accepted as true." On appeal from a summary judgment, "we liberally construe the declarations for the plaintiff's experts and resolve any doubts as to the propriety of granting the motion in favor of the plaintiff." (*Powell v. Kleinman* (2007) 151 Cal.App.4th 112, 125-126; accord, *Shiver, supra*, 24 Cal.App.5th at p. 403.) But we are not required to accept as true facts and opinions stated in an expert's declaration if the facts are not supported by the record and no reasoned explanation is given for how

17

the expert arrived at the opinions. Again, " '[a]n expert opinion is only as good as the facts and reasons on which it is based.' " (*Shiver*, at p. 403.) Where, as here, the expert assumes facts with no evidentiary support and offers no explanation as to how the facts lead to the conclusions he reached, the opinion has no evidentiary value and cannot create a triable issue of fact to defeat a motion for summary judgment. (*Wicks*, *supra*, 49 Cal.App.5th at pp. 881-882; *Bushling v. Fremont Medical Center* (2004) 117 Cal.App.4th 493, 510-511.)

Finally, we consider the deposition testimony that the Elsners contend was sufficient to raise triable issues of fact as to whether Delucas acted as a reasonably careful person in response to the sudden emergency. The Elsners cite Rojas's testimony that she "saw the truck drive right through the lane" over Rohn without swerving. They also cite testimony of Rojas's son, Andre Lajoy, who was driving the car in which Rojas was a passenger. Lajoy testified that Rohn "got r[u]n over by the front tire" of the truck Delucas was driving. The Elsners argue this testimony "at a minimum, materially challenge[s] Delucas'[s] claims that he straddled [Rohn] and that he braked before running [him] over." We disagree.

Rojas's testimony that Delucas did not swerve and stayed in his lane of traffic is fully consistent with the statements in his declaration that he decided the safest course of action was to brake and to try to straddle Rohn between the wheels of the truck, because the steep embankment prevented swerving to the right and swerving to the left would have put the truck into the oncoming lane of traffic and potentially over the cliff. Lajoy's testimony that a front tire of the truck ran over Rohn is not inconsistent with Delucas's declaration. Delucas stated he "straddled [Rohn] with the truck in [an] effort to avoid running him over with the tires" and "attempt[ed] to straddle [Rohn]

18

given the space between the bottom of the truck and the roadway." The lack of success of that attempt does not mean that Delucas did not try to avoid running over Rohn or that he was negligent for choosing that course of action in response to the sudden emergency. "Defendant's conduct cannot be judged by hindsight. The fact that reflection after the fact may indicate that defendant's choice of alternatives was a mistake, if indeed it was, it being questionable whether the disaster could have been avoided by [some other choice], does not establish negligence." (*Schultz*, *supra*, 3 Cal.App.3d at p. 913.) We therefore reject the Elsners' claims that "[e]ye witness testimony disputed Delucas['s] claim that he attempted to avoid running over [Rohn] and that he was attentive."

D.    *Conclusion*

For the reasons discussed above, we conclude that Delucas met his burden on the summary judgment motion to establish a prima facie case that he encountered a sudden and unexpected emergency in which somebody was in actual or apparent danger of immediate injury, he did not cause the emergency, and he chose a course of action that a reasonably careful person confronted with the emergency might have chosen. (*Shiver*, *supra*, 24 Cal.App.5th at p. 399.) The Elsners did not submit evidence that raised a triable issue of fact on any of those elements. Therefore, Delucas was entitled to summary judgment based on the sudden emergency doctrine. (Code Civ. Proc., § 437c, subd. (c); *Shiver*, at p. 397.)

Delucas's entitlement to summary judgment also entitled SDG&E to summary judgment. "It is the firmly-established rule that a judgment on the merits favorable to an employee in an action by a third person for a tort of the employee is a bar to an action by the third person against the employer where the latter's asserted liability for the tort rests upon *respondeat superior*

19

and not his independent tort." (*Freeman v. Churchill* (1947) 30 Cal.2d 453, 461; accord, *Shaw v. Hughes Aircraft Co.* (2000) 83 Cal.App.4th 1336, 1347.) "Because the vicarious liability of the employer is wholly dependent upon or derived from the liability of the employee, any substantive defense that is available to the employee inures to the benefit of the employer." (*Lathrop v. HealthCare Partners Medical Group* (2004) 114 Cal.App.4th 1412, 1423.) Since the Elsners alleged SDG&E was vicariously liable for Delucas's negligence, the sudden emergency doctrine that shields Delucas from liability also shields SDG&E. The trial court therefore properly entered summary judgment in favor of defendants.

## III.

## DISPOSITION

The judgment is affirmed.

IRION, J.

I CONCUR:

HUFFMAN, Acting P. J.

20

DO, J., Dissenting.

The sudden emergency doctrine does *not* apply to a party whose negligence "causes *or contributes* to the creation of the perilous situation." (*Pittman v. Boiven* (1967) 249 Cal.App.2d 207, 216 (*Pittman*), italics added; accord *Abdulkadhim v. Wu* (2020) 53 Cal.App.5th 298, 302; *Shiver v. Laramee* (2018) 24 Cal.App.5th 395, 399 (*Shiver*).)  Here, I conclude Linda and Kelsey Elsner (together, the Elsners) produced sufficient evidence to create a triable issue on whether George Delucas's negligence contributed to the creation of the perilous situation he confronted on Wildcat Canyon Road. That same evidence compelled the trial court, in its tentative decision to *deny* summary judgment, to conclude:

> "There is a question of fact as to whether, if . . . Delucas had been driving slower prior to travelling around the [blind] curve, . . . Delucas would not have had to choose between two bad options. While it appears it could still be said an emergency would have existed even if . . . Delucas had been driving slower, Plaintiffs' evidence indicates . . . *Delucas contributed to the emergency that he actually faced - being unable to stop in time* such that he faced the purported binary decision to try to 'straddle' [Rohn Elsner's] body or to swerve."  (Italics added.)

I believe the trial court had it right the first time.  I respectfully dissent.

There is no question Rohn's negligence was the sole cause of his *own* accident which caused him to lose control of his motorcycle, strike the adjacent embankment, and be thrown off his motorcycle onto the southbound lane of Wildcat Canyon Road.  But, according to a witness at the scene, "he was trying to get up," pushing himself up off the road by his hands, "when [Delucas's] truck was coming" downhill in the southbound lane toward Rohn. It was Delucas's contention he was "*unable to bring the truck to a complete stop before passing [Rohn]*" (italics added), and consequently he faced two bad options—swerve to the right and hit the rock embankment on the west, or

1

swerve to the left to avoid Rohn but cross over into the lane of oncoming traffic and face a steep cliff on the east. So Delucas made the choice to try and bring the truck to a stop while straddling over Rohn with the truck's undercarriage clearance. Rohn was crushed by Delucas's 26,000 pound truck.

The sudden emergency that confronted Delucas was a downed motorcyclist in his path of travel, *and that he was unable to stop in time.* Here, the Elsners asserted Delucas contributed to that emergency by negligently driving a 26,000 pound commercial truck, around a blind curve, at an excessive and unsafe speed such that he was unable to stop in time. They argued that triable issues of material fact on Delucas's negligence foreclosed application of the affirmative defense on summary judgment. The Elsners were correct on the law. (See *Leo v. Dunham* (1953) 41 Cal.2d 712, 714 (*Leo*) ["under the cases and the authorities, a person who, *without negligence on his part*," may avail himself of the sudden emergency doctrine (italics added)]; *Shiver*, *supra*, 24 Cal.App.5th at p. 399 [" 'A party will be denied the benefit of the [sudden emergency] doctrine . . . where that party's negligence causes or contributes to the creation of the perilous situation.' "].) The dispositive question on the summary judgment motion is whether the Elsners produced sufficient evidence to create a triable issue of fact as to Delucas's negligence. I believe they did.

When, as here, a defendant moves for summary judgment based on the assertion of an affirmative defense, he has the initial burden to show that undisputed facts support " ' "*each* element of the affirmative defense." ' " (*Consumer Cause, Inc. v. Smilecare* (2001) 91 Cal.App.4th 454, 468 (*Consumer Cause*), italics added.) If he does not meet this burden, " 'the motion must be denied.' " (*Ibid.*) Aware they had the burden under the sudden emergency doctrine to show there was no negligence on Delucas's

2

part, SDG&E and Delucas (together, defendants) produced evidence that "Delucas was traveling well below the speed limit," at "approximately 40 miles per hour *prior to* entering the series of curves leading up to the curve where [Rohn] had crashed, and he had braked and *slowed* as he maneuvered through each curve, never pressing the gas pedal nor accelerating while going through the curves." (Italics added.)

The Elsners disputed the asserted fact that Delucas drove at a safe speed through the blind curves before encountering Rohn. They presented the expert declaration of V. Paul Herbert, a commercial motor vehicle safety and compliance expert, who relied on the California Highway Patrol's traffic collision report, Delucas's deposition testimony, photographs of the accident site, among other materials.

Herbert averred "there is a posted sign with an advisory speed of 25 mph when driving around the sharp curve where [the accident] occurred," and that "[t]he reduced advisory speed is *due to the nature of the sharp curve* as well as the *significant downhill grade when driving southbound*." (Italics added.) These facts were not disputed.

Herbert explained a 26,000 pound commercial truck "is slower to stop than regular vehicles." For that reason, commercial truck drivers are trained to "drive *at or below* the posted advisory speed" and "to look 12 to 15 seconds ahead in the roadway" for potential hazards. Herbert opined that "Delucas should have been driving at a speed no greater than 25 miles per hour given the size and weight of [his truck] combined with the downhill grade and limited line of sight due to the curves," and that he should have scanned for hazards 12 to 15 seconds ahead, not the 8 to 12 seconds Delucas testified he was trained to keep. Delucas's failures, Herbert opined, "caused or contributed" to Rohn's death.

3

Herbert's expert opinions did not stand alone. The Elsners produced the testimony of a witness who travelled Wildcat Canyon Road the day of the accident confirming the road has "[m]any blind S curves" and is "very dangerous." They also produced Delucas's deposition testimony, in which he acknowledged he is "trained to look out for all the hazards that's possibly on the roadway," *including* "a motorcycle or a downed motorcyclist." Delucas admitted he *should* drive at a speed that would enable him to stop if there is a hazard in the road, and that *it is important to adjust his speed to account for visibility* in order "[t]o stop the vehicle in a timely manner." Delucas also conceded he does not remember seeing the 25 mph advisory speed sign the day of the accident, although he knew "most windy roads do have advisory speed limits."

In reply to the Elsners' opposition evidence disputing Delucas's contention he drove safely because he was "well below the speed limit," the defendants argued the posted regulatory speed limit on Wildcat Canyon Road was 50 mph and the advisory speed "is non-mandatory, and [the Elsners] have cited to no law to the contrary." This reply *argument* was insufficient to eliminate the disputed material fact. And it was also incorrect on the law.

Delucas's "compliance with the posted speed law does not negate his negligence as a matter of law. California's basic speed law provides, 'No person shall drive a vehicle upon a highway at a speed greater than is reasonable or prudent having due regard for weather, *visibility*, the traffic on, and *the surface and width* of, the highway, and in no event at a speed which endangers the safety of persons or property.' (Veh. Code, § 22350.)" (*Maxwell v. Colburn* (1980) 105 Cal.App.3d 180, 186, italics added.) "The legal requirement that drivers of vehicles shall drive in a careful manner and with due regard for the safety of others is a recognition of the rule that prima facie

4

speed limits fix a prima facie maximum, but not a minimum, for careful driving." (*Porter v. Signal Trucking Service* (1943) 59 Cal.App.2d 289, 294–295 (*Porter*); see Veh. Code, § 22351, subd. (a) ["The speed of any vehicle upon a highway not in excess of the limits specified in Section 22352 or established as authorized in this code is lawful unless clearly proved to be in violation of the basic speed law."].)

Whether Delucas's speed was reasonable or prudent, given the conditions of the "very dangerous" road,—including the many blind curves that limited visibility, the surface and width of the two-lane mountainous road, and the significant downhill grade of his lane of travel on Wildcat Canyon Road—was a question of fact for a jury to decide. And although I agree with the majority opinion that truckers are subject to the same standard of care as all motorists (Maj. opn., at p. 9), I disagree with the suggestion that it is irrelevant that Delucas was operating a 26,000 pound commercial truck in determining whether he in fact exercised the required care.

The majority's quotation from *Shuff v. Irwindale Trucking Co.* (1976) 62 Cal.App.3d 180, 188—" [w]hen truckers share the public road with other motorists they are subject to the same standard of care as all motorists' "—is out of context. (Maj. opn., at p. 9.) In a case involving a freeway collision among four large trailer rigs, the Court of Appeal concluded the trial court erred in instructing the jury that: " 'When a person's lawful employment requires that he work in a dangerous location or a place that involves unusual possibilities of injury, or requires that in the line of his duty he take risks which ordinarily a reasonably prudent person would avoid, the necessities of such a situation . . . *lessen* the amount of caution required of him by law in the exercise of ordinary care.' " (*Shuff*, at p. 187, italics added.)

5

The court reasoned the instruction was error because it "could have and probably did lead the jury to believe that the standard of care in general and the speed law in particular is *different* for drivers of large trucks than for the ordinary motorist." (*Ibid.*, italics added.) Here, "different" meant *less* care. The court explained, "[t]he operation of a large truck may be and probably is a dangerous activity. Such vehicles, improperly controlled, do present a special danger to others. The driver of a large truck, however, should exercise a *greater* not lesser amount of caution than the ordinary driver and take fewer not more risks than an ordinary driver." (*Shuff*, at pp. 187–188, italics added.)

The ultimate question whether Delucas was negligent in failing to drive at a speed that would enable him to stop a 26,000 pound commercial truck in time to avoid the collision with Rohn was a disputed question of fact for a jury to decide. This disputed material fact precludes application of the sudden emergency doctrine on summary judgment. Although defendants may be able to prove at trial that Delucas was free of negligence, in deciding the summary judgment motion, the trial court and this court are required to resolve all doubts concerning the evidence in the Elsners' favor. (*Gonzalez v. Mathis* (2021) 12 Cal.5th 29, 39 [" 'We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party.' "].)

The majority opinion, however, resolves the conflict in the evidence by essentially dismissing Delucas's allegedly negligent driving. It does so by framing the sudden emergency only as "Rohn[ ] lying in Delucas's travel path" (Maj. opn., at p. 10), and then it concludes "*[n]othing* Delucas did on the other side of the blind curve, including the failure to slow his truck to 25 miles per hour and to scan for hazards 12 to 15 seconds ahead . . . was a

6

substantial factor" in putting Rohn in the middle of the road. (Maj. opn., at pp. 10–11, italics added.) It then disregards Herbert's expert declaration because it discusses "breaches" that only "concern the conduct of Delucas *before he encountered the emergency.*"[1] (Maj. opn., at p. 13, italics in original.) This analysis is too simplistic.

The sudden emergency doctrine is typically invoked in cases involving collisions between vehicles or collisions between a vehicle and a pedestrian. I have yet to find a case in which the sudden emergency doctrine shielded *an otherwise negligent defendant* simply because the defendant did not cause the plaintiff pedestrian or plaintiff driver to be in the exact location where the collision occurred.

Rather, the cases on the sudden emergency doctrine require "that defendant be free from negligence on [his] part *up to the time* of being confronted with imminent peril." (*Grinstead v. Krushkhov* (1964) 228 Cal.App.2d 793, 796, italics added; see *Leo*, *supra*, 41 Cal.2d at p. 718 (dis. opn. of Carter, J.) ["In order for the [sudden emergency] doctrine to apply to defendant's conduct, there must have been no negligence, as a matter of law, on his part *until he was confronted* with the sudden emergency." (Italics

---

[1]   I find the majority opinion's quotation of *Leo*, *supra*, 41 Cal.2d at p. 714—" '[t]he decisive factor here is the time when [Delucas] knew, or should have known, that an accident would occur unless preventative steps were taken' "—to also be misplaced. (Maj. opn., at p. 13.) In *Leo*, the defendant driver on a highway saw a pedestrian begin to walk across the highway but looking in the opposite direction. Each mistakenly assumed the other would yield, and the point of impact was disputed. (*Leo*, at pp. 713–714.) In that context, our high court stated "[t]he decisive factor here is the time when [the defendant driver] knew, or should have known, that an accident would occur unless preventive steps were taken." (*Leo*, at p. 714.) That sentence has no application in this case, where the critical facts involve an accident site with blind curves, and the consequence of Delucas's lack of visibility given the blind curves is disputed.

7

added.)].) Stated another way, "one invoking [the doctrine] must have been free from negligence placing him in the orbit of peril." (*Edgett v. Fairchild* (1957) 153 Cal.App.2d 734, 738.)

For example, in *Schultz v. Mathias* (1970) 3 Cal.App.3d 904, a jury found for the defendant driver in a wrongful death action arising from a head-on car collision. (*Id.* at pp. 908–909, disapproved on other grounds in *Scala v. Jerry Witt & Sons, Inc.* (1970) 3 Cal.3d 359, 364, 366.) The trial court granted a new trial based on insufficiency of the evidence to justify the defense verdict, finding the defendant's negligent operation of his car caused the fatal collision. (*Id.* at pp. 910–911.) In reversing, and applying the sudden emergency doctrine, the Court of Appeal concluded there was "no evidence to indicate that defendant was negligent *up to the moment* he first saw [plaintiff's vehicle] in the wrong lane. The evidence pertaining to defendant's *speed*, his *attentiveness to the road ahead*, . . . were all without conflict." (*Id.* at pp. 912–914, italics added.) That is not the case here. The Elsners produced sufficient evidence to put Delucas's speed and attentiveness to the road ahead in dispute.

The majority opinion dismisses Herbert's declaration as insufficient evidence to establish Delucas's negligent driving because it finds Herbert only "implied, but did not state, that had Delucas been traveling slower and paying closer attention to the road ahead, he could have spotted Rohn in time to avoid fatally running him over." (Maj. opn., at pp. 13–14.) I do not find Herbert's declaration to be so opaque. Even the majority opinion is able to draw from Herbert's declaration the reasonable inferences that Delucas's speed and attentiveness to the road prevented him from being able to stop in time to avoid fatally running over Rohn.

8

The majority opinion further dismisses Herbert's declaration because it finds he erroneously assumed Delucas had a duty to leave " ' "a proper space cushion" ' " between his truck and Rohn, and that *Shiver* already rejected the " 'space cushion' theory." (Maj. opn., at pp. 14–15.) There are two problems with this criticism, however.

First, nowhere in Herbert's declaration does he discuss a duty to leave a proper space cushion.[2] This argument also does not appear in the Elsners' briefing on the summary judgment motion or on appeal. Herbert's opinion was that Delucas should have maintained *a proper lookout* by scanning 12 to 15 seconds ahead for unexpected hazards in the road. And here, it is correct that " 'the driver of an automobile "has no right to assume that the road is clear, but under *all circumstances* and *at all times* he must be vigilant and must anticipate the presence of others[.] Even though the operator of an automobile may be rigidly within the law, "he still remains bound to anticipate that he may meet persons *at any point of the street*, and he must, in order to avoid the charge of negligence, keep a proper lookout for them and keep his machine under such control as will enable him to avoid a collision with another person using proper care and caution[.]' " (*Brush v. Kurstin*

---

[2] As explained in *Shiver,* a proper space cushion derives from Vehicle Code section 21703, which provides: " 'The driver of a motor vehicle shall not *follow another vehicle* more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon, and the condition of, the roadway.' " (*Shiver*, *supra*, 24 Cal.App.5th 395, 402, italics added.) Moreover, the court in *Shiver* rejected the appellant's assertion that defendant Laramee had a duty to leave a proper space cushion because "Laramee was *not* following appellant." (*Ibid*, italics added.) For the same reason, the duty under Vehicle Code section 21703 does not apply here. No one asserted Delucas followed Rohn's motorcycle; they were traveling in opposite directions. Thus, Herbert never discussed Delucas's duty to leave a proper space cushion between his truck and Rohn's motorcycle.

9

(1936) 11 Cal.App.2d 258, 261–262, third italics added, quoting *Reaugh v. Cudahy Packing Co.* (1922) 189 Cal. 335, 340; accord *Welch v. Sink* (1937) 24 Cal.App.2d 231, 236.)

Second, although mistaken, the majority opinion then concludes Herbert's reliance on a proper space cushion " 'assumes an incorrect legal theory' " because Delucas had a right to assume that Rohn would perform his duty and obey the law by " 'not enter[ing] Delucas's lane of travel.' " (Maj. opn., at p. 15.) But only "a person *who, himself, is exercising ordinary care* has a right to assume that others will perform their duty under the law." (*Pittman*, *supra*, 249 Cal.App.2d at p. 216, italics added; see also *Porter, supra,* 59 Cal.App.2d at pp. 294–295 [instruction to jury that " 'a party has a right to assume that other persons using the highway will obey the law and that the driver of the truck and trailer in this case had the right to assume that [plaintiff] would stop his . . . automobile' " omitted "the requirement that before the defendant driver could rely upon such assumption, *he must himself be without fault*" (italics added)].)

The majority opinion also takes issue with Herbert's declaration because, it finds, he "stated no facts" to support his "unstated and unexplained factual assumption" that "had Delucas not been traveling faster than 25 miles per hour when he first saw Rohn, there would have been sufficient space between the truck and Rohn that Delucas could have brought the truck to a stop before reaching Rohn." (Maj. opn., at p. 14.) I disagree that Herbert's declaration was lacking. But, again, Herbert's expert opinions on Delucas's negligence did not stand alone.

The Elsners also submitted the declaration of Alvin Lowi III, an accident reconstruction expert who, among other qualifications, has reconstructed over two thousand automobile accidents, of which

10

"[h]undreds . . . involved auto versus motorcycle and pedestrian accidents such as the type involved" in this case.  Lowi holds a bachelor's degree in applied physics and mechanics from Cornell University, a master's degree from the University of Southern California in aerospace engineering (structural mechanics), and he has been licensed as a "Registered Professional Mechanical Engineer" in California for over 30 years.  Defendants did not object to Lowi's qualifications as an accident reconstruction expert, which is understandable given his credentials.

Here, Lowi personally *inspected* and analyzed "all of the physical evidence," including Delucas's truck, Rohn's motorcycle, the accident site on Wildcat Canyon Road, as well as reviewed a 3D terrain scan of the accident site and a 3D model of Delucas's truck.  He also reviewed the traffic collision report, in which the California Highway Patrol officer documented the points of rest for both Rohn's body and motorcycle, and provided precise locations of physical evidence such as debris from Rohn's motorcycle and "[t]ire friction mark[s]."

Based on his inspection and analysis of the physical evidence, Lowi "reconstructed [the] position of [Rohn's] motorcycle," and concluded the motorcycle "was in a direct line of sight to Delucas for more than approximately 300 feet."  He then concluded "[b]ased on Delucas['s] testimonial speed of 40 mph and an assumed Perception-Reaction time of 1.5 seconds, it would have required approximately 196 feet for Delucas to stop his truck" and "[o]nce the downed motorcycle came [into] Delucas'[s] line of sight, he would have had sufficient time to bring his truck to a complete stop, without coming into contact with Rohn Elsner."  Lowi further concluded that "had Delucas been driving his truck at a speed of 25 mph and an assumed Perception-Reaction time of 1.5 seconds, it would have required

11

approximately 97 feet for Delucas to stop his truck. The lower speed would have afforded Delucas more time and distance to avoid [Rohn]."

Yet the majority opinion also dismisses Lowi's declaration. It does so because he "did not identify the locations of the SDG&E truck and Rohn's motorcycle when the motorcycle first came into Delucas's line of sight; state how he determined the locations; explain how he reconstructed the position of the motorcycle; state why he assumed a perception-reaction time of 1.5 seconds; identify the formula he used to calculate the stopping distance for the truck; state what values he plugged into that formula; or explain how he determined those values." (Maj. opn., at p. 16.) The majority opinion also rejects Lowi's opinion that Rohn's downed motorcycle "was in a direct line of sight to Delucas for more than approximately 300 feet" because he "identified no testimony or other evidence" to support that fact. (Maj. opn., at p. 17.) But he did. His opinion was based on his reconstruction of the position of Rohn's motorcycle at the accident site, which was based on his personal inspection and analysis of "all of the physical evidence" and presumably on the traffic collision report that documented precise locations of the evidence found at the accident site. That is sufficient foundation for his conclusion.

The majority opinion suggests Lowi, and Herbert, somehow " ' "*create*[*d*] *the facts*" ' " upon which he based his conclusion. (Maj. opn., at pp. 11–12, fn. 2.) I disagree with my colleagues' criticism. Lowi's analysis and the manner in which he reached his conclusions are typical of how accident reconstruction experts work. (See *Box v. California Date Growers Assn.* (1976) 57 Cal.App.3d 266, 274 [holding trial court did not err in allowing plaintiff's accident reconstruction expert to testify as to the path and trajectory of the motorcycle after impact].) As the court in *Box* recognized, "certain indefinite factors may enter into the determination of the course of

12

vehicles after an impact but these are relevant to the *weight* of an expert's opinion." (*Box*, at p. 275, italics added.) "[S]ufficient grounds upon which [the expert may] predicate an opinion as to the path of the motorcycle after impact" include consideration of such factors as: "(1) the distance traveled by the motorcycle after the collision; (2) the point of rest of plaintiff's body; (3) the type of damage to the left front fender of the pickup truck; (4) an examination of the same make and model of motorcycle; and (5) an inspection of the accident scene." (*Ibid*.) These are the same factors relied on by Lowi in reaching his conclusions. "The object of accident reconstruction is to reach satisfactory—not infallible—conclusions as to the operational factors and dynamic situation contributing to the collision." (*Id*. at p. 274.) And it is within the sole province of the trier of fact to determine whether to ultimately believe and accept Lowi's expert conclusions.

The majority opinion's heightened and exacting standards for the Elsners' experts at summary judgment are unjustified. Our Supreme Court has repeatedly explained, "[e]vidence presented *in opposition* to summary judgment is liberally construed, with any doubts about the evidence resolved in favor of the party opposing the motion." (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618, italics.) "[W]hen considering the declarations of the parties' experts, we liberally construe the declarations for the plaintiff's experts and resolve any doubts as to the propriety of granting the motion in favor of the plaintiff." (*Powell v. Kleinman* (2007) 151 Cal.App.4th 112, 125–126; see *Hanson v. Grode* (1999) 76 Cal.App.4th 601, 604 (*Hanson*) [" ' "the moving party's affidavits are strictly construed while those of the opposing party are liberally construed" ' "].) Thus, "[i]n light of the rule of liberal construction, a reasoned explanation required in an expert declaration filed *in opposition* to a

13

summary judgment motion need *not* be as detailed or extensive as that required in expert testimony presented in support of a summary judgment motion or at trial." (*Garrett v. Howmedica Osteonics Corp.* (2013) 214 Cal.App.4th 173, 189, italics added.) Although the majority opinion cites this principle in discussing the applicable standard of review (maj. opn., at p. 6), it fails to apply its substance in analyzing either of Herbert's or Lowi's declaration.

As I have noted, the trial court concluded in its tentative decision there was a triable issue of fact whether Delucas's negligent driving "contributed to the [sudden] emergency that he actually faced – being unable to stop in time such that he faced the purported binary decision to try to 'straddle' [Rohn's] body or to swerve." In reaching its tentative decision to deny defendants summary judgment, the court relied solely on Herbert's declaration. It said nothing of Lowi's declaration. But in reversing its tentative decision, the court simply stated, without explanation, that it "agrees with [d]efendants' argument . . . that . . . Lowi's declaration lacks foundation and therefore his opinions as to SDG&E's fault are largely without merit." Notably, the trial court left undisturbed its earlier determination that Herbert's declaration created a triable issue of fact as to whether Delucas's negligent driving contributed to the creation of the emergency.

Moreover, the trial court *expressly overruled* all but two[3] of defendants' written objections to Herbert's declaration, and all written objections to Lowi's declaration, including on grounds the opinions lacked foundation, were

---

3      The two sustained objections pertained to Herbert's opinions on SDG&E's training of Delucas.

improper expert opinions, and relied on erroneous facts.[4]  Because

Defendants have not reasserted those objections on appeal, they have been

forfeited.  (See *Flake v. Neumiller & Beardslee* (2017) 9 Cal.App.5th 223, 229,

fn. 4 [declining to consider objections that were "not separately headed or

briefed on appeal"]; *Sherman v. Hennessy Industries, Inc.* (2015) 237

Cal.App.4th 1133, 1139, fn. 1 ["As no objection has been reasserted on appeal,

all have been forfeited."].)  Thus, on our de novo determination of whether the

Elsners' evidence created a triable issue of material fact, and where, as here,

there is a conflict in the evidence, the facts alleged in the Elsners' expert

declarations and the reasonable inferences therefrom " '*must* be accepted as

true.' " (*Hanson, supra*, 76 Cal.App.4th at p. 604, italics added; accord

*Birschtein v. New United Motor Manufacturing, Inc.* (2001) 92 Cal.App.4th

994, 999 ["our account of the facts is presented in the light most favorable to

the nonmoving party below, in this case [plaintiffs], and assumes that, for

purposes of our analysis, *[plaintiffs'] version of all disputed facts is the correct

one*" (italics added)].)

     Whether a person has been suddenly confronted with imminent peril is

ordinarily a question of fact to be submitted to the jury.  (See *Leo, supra*, 41

Cal.2d at p. 715; *Damele v. Mack Trucks* (1990) 219 Cal.App.3d 29, 37

["Whether the conditions for application of the imminent peril doctrine exist

is itself a question of fact to be submitted to the jury."].)  Likewise, "[w]hether

the one seeking to invoke the doctrine was free of negligence is ordinarily a

---

[4]    Having overruled all foundational objections to Lowi's declaration, it was then improper for the trial court to reject Lowi's declaration as lacking in foundation and to weigh the merits of his expert opinions.  (See *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [the party opposing summary judgment has only a burden of production, not a burden of persuasion].)

question of fact for the jury." (*Philo v. Lancia* (1967) 256 Cal.App.2d 475, 482.) I disagree this was "the rare case" in which we could, or should, apply the doctrine as a matter of law on a summary judgment motion. (Cf. *Shiver*, *supra*, 24 Cal.App.5th at p. 397 [finding it to be a "rare case when the rule applies at a summary judgment motion"; "[a] freeway driver with the right of way is not required to anticipate *an act of road rage* that unexpectedly causes merging traffic in front of him to come to almost a dead stop . . . [and] that is . . . why defendants [were] not liable" (italics added)].)

Because defendants have failed to establish Delucas was not negligent, as a matter of law, the sudden emergency doctrine does not apply on their summary judgment motion. There is a question of fact as to whether Delucas was negligent in failing to drive a 26,000 pound commercial truck through blind curves on a dangerous road at a speed in excess of the advisory speed limit, such that he was unable to stop in time to avoid a downed motorist. Rohn's obvious negligence which caused him to be thrown off his motorcycle and land in Delucas's path of travel goes to the issue of comparative negligence. It does not preclude recovery against Delucas and SDG&E, as a matter of law. (See *B.B. v. County of Los Angeles* (2020) 10 Cal.5th 1, 14 [noting that California abolished the contributory negligence defense, "which barred *all* recovery if *any* negligent conduct of the injured plaintiff 'contributed as a legal cause in any degree to the harm suffered,' " and replaced it with a system of pure comparative fault under which " 'liability for

damage will be borne by those whose negligence caused it in direct proportion to their respective fault' "].) Accordingly, I would reverse.[5]

DO, J.

---

[5] Because I conclude defendants have failed to establish there was no negligence, as a matter of law, on Delucas's part, I do not address the majority opinion's discussion of the other contentions raised by the Elsners. (*Consumer Cause, supra*, 91 Cal.App.4th at p. 467 [summary judgment " 'must be denied' " if defendant fails to show that undisputed facts support " ' "each element of the affirmative defense." ' "].)