Filed 7/11/18 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| JOSHUA SHIVER,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>CHARLES EDWARD LARAMEE, et al.,<br><br>    Defendants and Respondents. | 2d Civil No. B283420<br>(Super. Ct. No. 15CV03780)<br>(Santa Barbara County)<br><br>ORDER MODIFYING OPINION<br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on June 12, 2018, be modified as follows:

1.  Page 1, first paragraph, second to the last sentence:

"The driver of a motor vehicle who lawfully has the right of way is 1) not required to foresee "roadrage"; and 2) that cars merging on a freeway onramp will unsafely merge and then "slam" on the brakes in front of the driver," is deleted and replaced with:

"A freeway driver with the right of way is not required to anticipate an act of road rage that unexpectedly causes merging traffic in front of him to come to almost a dead stop."

2.  Page 1, second paragraph, first sentence:

"Appellant Joshua Shiver brought a negligence action against respondents Charles Edward Laramee and John Shapka Trucking, Ltd," is deleted and replaced with:

"Appellant Joshua Shiver brought a negligence action against respondents Charles Edward Laramee and Don Shapka Trucking, LTD."

3. Page 2, first full paragraph, third sentence:

"John Shapka Trucking, Ltd., was Laramee's employer and the owner of the tractor-trailer" is deleted and replaced with:

"Don Shapka Trucking, LTD, was Laramee's employer and the owner of the tractor-trailer."

[No change in judgment.]

Filed 6/12/18 (unmodified version)
**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| JOSHUA SHIVER, | 2d Civil No. B283420 |
| | (Super. Ct. No. 15CV03780) |
|   Plaintiff and Appellant, | (Santa Barbara County) |
| | |
| v. | |
| | |
| CHARLES EDWARD LARAMEE et al., | |
| | |
|   Defendants and Respondents. | |

      The sudden emergency doctrine, aka the imminent peril doctrine, shields a defendant from liability in a negligence action. The rule is aptly restated in jury instruction CACI 452. Here we have the rare case when the rule applies at a summary judgment motion. The driver of a motor vehicle who lawfully has the right of way is 1) not required to foresee "roadrage"; and 2) that cars merging on a freeway onramp will unsafely merge and then "slam" on the brakes in front of the driver. As we shall explain in detail, that is what happened here and why the defendants are not liable.

      Appellant Joshua Shiver brought a negligence action against respondents Charles Edward Laramee and John Shapka

Trucking, Ltd.  Appellant was injured when his car was rear-ended by respondents' tractor-trailer.  Appellant appeals from the judgment entered after the trial court granted respondents' motion for summary judgment.  The trial court ruled that respondents were not liable pursuant to the sudden emergency doctrine.  The doctrine applies where a defendant, acting with reasonable care, is suddenly and unexpectedly confronted by an emergency he did not cause.  We affirm.

*Facts*

The traffic collision occurred in September 2014 at approximately 6:00 p.m. on the southbound US 101 freeway in Santa Maria.  Laramee was driving a fully-loaded tractor-trailer in the far-right lane (the #3 lane).  John Shapka Trucking, Ltd., was Laramee's employer and the owner of the tractor-trailer.

Three cars used a southbound on-ramp to enter the freeway in front of Laramee's tractor-trailer.  The first was a black car with an unknown driver.  The second car was driven by Michelle Adams.  The third car was driven by appellant.  According to the California Highway Patrol Traffic Collision Report, Adams "related that [the black car] was tailgating her and driving recklessly behind her as she approached the on-ramp . . . .  As she entered the on-ramp, [the black car] moved out of the on-ramp lane into the #3 lane . . . and passed [Adams] while giving her an obscene gesture.  [Adams] merged [from the on-ramp] into the #3 lane . . . directly to the rear of [the black car]."  The black car suddenly braked "causing [Adams] to apply the brakes.  [Appellant] had to apply [his] brakes directly to the front of [Laramee] in order to avoid a collision with [Adams].  [Laramee] noticed that the vehicles ahead of him were stopping, but he was unable to stop or take evasive action before the front of [his

2

tractor-trailer] struck the rear of [appellant's car]. This impact caused [appellant's car] to move forward to where the front of [his car] struck the rear of [Adams's car]."

Adams did not hit the black car in front of her. She would have hit it if she had not braked. The black car did not stop and continued southbound on the freeway.

Appellant first saw Laramee's tractor-trailer when it "was just behind [an] overpass" about three-tenths of a mile away from the location of the collision. The tractor-trailer "was going with the flow of traffic" and was traveling "at least 55 to 60" miles per hour. "The cars entering the freeway were going 35-40 [miles per hour] on the on-ramp."

Appellant testified: "I was looking back and forth between Mr. Laramee's truck and Ms. Adams' vehicle . . . trying to judge" whether I would "be able to safely merge" into the #3 lane in front of Laramee. Laramee slowed down "by 15 to 20 percent." "If [Laramee] would have been closer [to appellant's vehicle] I would have just . . . let him go by and fall in behind him, but because [Adams] seemed like she was starting to pick speed up at the bottom of the ramp, I looked one more time before I turned my blinker on to commit, and . . . as we merged [Adams] hit her brakes and went from 40 [miles per hour] to pretty much a dead stop." "I [was] . . . halfway maybe a quarter into" the #3 lane and Adams was "all the way into" that lane. Laramee "was pretty much on top of me, all I saw [through the rear-view mirror] was [the tractor- trailer's] brush guard [i.e., front metal bumper]. I couldn't see the cab of the truck." Appellant estimated that his maximum speed was 45 miles per hour.

Laramee testified: He was going 45 miles per hour when he saw three cars ahead traveling along the on-ramp to the

freeway. The black car "just was on this lady [Adams] constantly. . . . Then . . . the lady braked. The other fellow behind her braked. I broke [*sic*] . . . [and] collided with the fellow in front of me." When the black car passed Adams before braking in front of her, Laramee "slowed down." When appellant started to merge into the #3 lane, Laramee was two-car lengths behind him.

It is undisputed that, "[a]lthough he . . . was able to brake and sound his horn, Laramee was not able to stop his fully loaded truck and trailer before contacting the rear of [appellant's] car." When empty, Laramee's tractor-trailer "probably" weighed 32,000 pounds.

*Trial Court's Ruling*

The trial court ruled: "[T]he sudden braking by the unidentified black vehicle, for no apparent reason, followed by the immediate braking by Ms. Adams and [appellant], created a sudden and unexpected emergency . . . . The actions of the three vehicles ahead of Mr. Laramee presented an unanticipated situation since vehicles merging onto a freeway normally increase their speed of travel with the flow of traffic instead of stopping suddenly. . . . The emergency was solely the result of the black vehicle[']s sudden and unexpected decision to slam on its brakes, in an act of apparent road rage . . . . Mr. Laramee, by sounding his horn and forcefully applying his brakes, acted as a reasonably careful person would have acted under similar circumstances."

Accordingly, the trial court concluded that appellant's claim against respondents "is barred by the sudden emergency doctrine."

*Sudden Emergency Doctrine*

The affirmative defense of the sudden emergency doctrine, also referred to as the imminent peril doctrine, is set forth in

CACI No. 452: "[Laramee] claims that he was not negligent because he acted with reasonable care in an emergency situation. [Laramee] was not negligent if he proves all of the following: [¶]  1. That there was a sudden and unexpected emergency situation in which someone was in actual or apparent danger of immediate injury; [¶]  2. That [Laramee] did not cause the emergency; and [¶]  3. That [Laramee] acted as a reasonably careful person would have acted in similar circumstances, even if it appears later that a different course of action would have been safer."

"The doctrine of imminent peril is properly applied only in cases where an unexpected physical danger is presented so suddenly as to deprive the driver of his power of using reasonable judgment.  [Citations.]  A party will be denied the benefit of the doctrine of imminent peril where that party's negligence causes or contributes to the creation of the perilous situation. [Citations.]"  (*Pittman v. Boiven* (1967) 249 Cal.App.2d 207, 216; see also *Leo v. Dunham* (1953) 41 Cal.2d 712, 714; *Schultz v. Mathias* (1970) 3 Cal.App.3d 904, 912-913, disapproved on another ground in *Scala v. Jerry Witt & Sons, Inc.* (1970) 3 Cal.3d 359, 364 & fn. 1, 366 ["'The test is whether the actor took one of the courses of action which a standard man in that emergency might have taken, and such a course is not negligent even though it led to an injury which might have been prevented by adopting an alternative course of action'".)

*Standard of Review*

"The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute.  [Citation.]"  (*Aguilar v.*

5

*Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.)  A motion for summary judgment "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  (Code Civ. Proc., § 437c, subd. (c).)  A triable issue of material fact exists only if "the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof."  (*Aguilar v. Atlantic Richfield Co.*, *supra*, at p. 850, fn. omitted.)

"'[A] defendant moving for summary judgment based upon the assertion of an affirmative defense . . . "has the initial burden to show that undisputed facts support each element of the affirmative defense" . . . .  If the defendant does not meet this burden, the motion must be denied.'  [Citations.]"  (*Consumer Cause, Inc. v. SmileCare* (2001) 91 Cal.App.4th 454, 467-468.) "[T]he burden shifts to the plaintiff to show there is one or more triable issues of material fact regarding the defense after the defendant meets the burden of establishing all the elements of the affirmative defense.  [Citations.]"  (*Jessen v. Mentor Corp.* (2008) 158 Cal.App.4th 1480, 1484.)

"[W]e independently review the record that was before the trial court when it ruled on [respondents'] motion.  [Citations.]  In so doing, we view the evidence in the light most favorable to [appellant] as the losing part[y], resolving evidentiary doubts and ambiguities in [his] favor.  [Citation.]"  (*Martinez v. Combs* (2010) 49 Cal.4th 35, 68.)

"We must presume the judgment is correct . . . ."  (*Jones v. Department of Corrections and Rehabilitation* (2007) 152 Cal.App.4th 1367, 1376.)  "'As with an appeal from any judgment,

6

it is the appellant's responsibility to affirmatively demonstrate error and, therefore, to point out the triable issues the appellant claims are present by citation to the record and any supporting authority. . . .' [Citation.]" (*Claudio v. Regents of University of California* (2005) 134 Cal.App.4th 224, 230.)

*No Triable Issues of Material Fact Exist as to the*
*Applicability of the Sudden Emergency Doctrine*

First Element: Sudden and Unexpected Emergency

Appellant contends that there is a triable issue of material fact "whether the emergency situation was sudden and unexpected." Appellant argues that "a jury could determine that the emergency situation was not sudden and unexpected because Mr. Laramee observed the emergency situation unfolding from three-tenths of a mile away" and because "there is a material issue of fact as to how long Mr. Laramee had to react to the sudden braking."

There are no triable issues of material fact whether the emergency was sudden and unexpected. The emergency arose because the black car suddenly braked in front of Adams's car. Appellant testified that Adams "hit her brakes and went from 40 [miles per hour] to pretty much a dead stop." As the trial court noted, this "presented an unanticipated situation since vehicles merging onto a freeway normally increase their speed of travel with the flow of traffic instead of stopping suddenly."

Second Element: Laramee Did Not Cause the Emergency

"[A] cause in fact is something that is a substantial factor in bringing about the injury [or other matter at issue]. [Citations.]" (*Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 969.) There are no triable issues of material fact whether Laramee's conduct was a substantial factor in bringing about the

7

emergency. The sole cause of the emergency was the sudden and unexpected braking of the black car. But for its braking, an emergency would not have arisen and appellant would have safely merged in front of Laramee's truck.

Third Element: Laramee's Conduct was Reasonable

The third element of the sudden emergency doctrine is that Laramee "acted as a reasonably careful person would have acted in similar circumstances." (CACI No. 452.) Appellant claims that "a jury could easily conclude that Mr. Laramee was negligent in the critical moments preceding the emergency situation." Appellant argues that "Laramee's failure to slow down after witnessing the road rage incident fell below the industry standard of care." But in his deposition appellant testified that Laramee had slowed down "by 15 to 20 percent." Before merging into the #3 lane, appellant looked back and "could see that [Laramee] wasn't coming up near as quick as he was when I first saw him." Appellant is bound by his deposition testimony. (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 21-22; *Archdale v. American International Specialty Lines Ins. Co.* (2007) 154 Cal.App.4th 449, 473 [court "affirm[ed] the summary judgment in its entirety as to the plaintiff Godinez" because "Godinez is bound by his deposition testimony" showing that his action is barred by the statute of limitations].)

Laramee confirmed that he had slowed down: "[T]he black car was trying to get away from behind [Adams's] car." "The black car took off. I slowed down. Then those cars [Adams's and appellant's cars] were still coming up onto the freeway." Laramee's statement, "The black car took off," referred to the black car's act of entering the #3 lane and passing Adams while she was driving in the on-ramp lane.

Appellant claims that a reasonable jury could conclude that Laramee "was negligent in failing to . . . leave a proper space cushion between his truck and [appellant's] vehicle."  The evidence does not support such a finding of negligence.  Laramee was under no duty to leave "a proper space cushion."  Vehicle Code section 21703 provides, "The driver of a motor vehicle shall not *follow* another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon, and the condition of, the roadway."  (Italics added.)  Laramee was not following appellant.  Laramee was driving in the #3 lane of the freeway, and appellant was driving in the adjacent on-ramp lane.  Appellant was required to "yield the right-of-way to all traffic . . . approaching on the highway close enough to constitute an immediate hazard, and [to] continue to yield the right-of-way to that traffic until he . . . can proceed with reasonable safety."  (Veh. Code, § 21804, subd. (a).)  Thus, based on the Vehicle Code, a reasonable person in Laramee's position could expect that appellant would follow the law and yield to Laramee's tractor-trailer:  "'The general rule is that every person has a right to presume that every other person will perform his duty and obey the law, and in the absence of reasonable ground to think otherwise it is not negligence to assume that he is not exposed to danger which comes to him only from violation of law or duty by such other person.' [Citations.]"  (*Leo v. Dunham*, *supra*, 41 Cal.2d at p. 715.)

Appellant asserts, "Mr. Laramee's failure to yield to the cars merging in front of him and . . . to maintain a safe space cushion . . . fell below the industry standard of care."  In support of his assertion, appellant cites page 249 of the Clerk's transcript.  This page is part of the declaration of V. Paul Herbert,

9

appellant's expert on commercial motor vehicle safety. Herbert declared: "Mr. Laramee's driving as he approached the subject collision site fell below the industry standards of care . . . . Had he been adequately taught and routinely practicing such safe driving principles involving the 'Seeing Habits' and 'Space Cushion Driving', it would have been very improbable that such a conflict situation could have developed." "Mr. Laramee failed to comply with these critical industry standards of care by his choice to not reduce his speed or to change lanes to the left as he approached the subject on-ramp. In so choosing not to yield to multiple merging vehicles, [Laramee] chose to not allow unhindered access to the freeway."

"In considering whether [Herbert's] opinions were sufficient to raise triable issues of fact, we must take into account that his declaration was submitted by appellant in opposition to respondent[s'] motion for summary judgment. In these circumstances, the expert's declaration is to be liberally construed. [Citation.] We must resolve 'any doubts as to the propriety of granting the motion in favor of [appellant]. [Citation.]' [Citation.] The requisite of a detailed, reasoned explanation for expert opinions applies to 'expert declarations in *support* of summary judgment,' not to expert declarations in *opposition* to summary judgment. [Citation.]" (*Jennifer C. v. Los Angeles Unified School Dist.* (2008) 168 Cal.App.4th 1320, 1332.)

Applying this standard of liberal construction to Herbert's declaration, we conclude that it is insufficient to raise a triable issue of fact whether, as claimed by appellant, "Laramee's failure to yield to the cars merging in front of him and . . . to maintain a safe space cushion . . . fell below the industry standard of care." Herbert's opinion was based on Laramee's alleged "failure to

10

reduce his speed in the face of the merging traffic, and his failure to safely move into the left travel lane." As previously discussed, appellant is bound by his deposition testimony that Laramee reduced his speed by 15 to 20 percent. In addition, appellant testified that a car in the #2 lane was to the left of Laramee's truck "[d]irectly behind his cab." Thus, Laramee could not have "safely move[d] into the left travel lane." "An [expert] opinion is only as good as the facts and reasons on which it is based. [Citations.]" (*Bozzi v. Nordstrom, Inc.* (2010) 186 Cal.App.4th 755, 763.)

Moreover, the evidence does not support Herbert's statement that, by "choosing not to yield to multiple merging vehicles, [Laramee] chose to not allow unhindered access to the freeway." Appellant's deposition testimony indicates that Laramee yielded to appellant. Appellant testified: "Up until the moment when Ms. Adams slammed on her brakes, . . . [I] thought [I] could safe[l]y merge in front of Mr. Laramee . . . even at the 40-mile per hour speed." "If [Laramee] would have been closer [to appellant's vehicle,] I would have just . . . let him go by and fall in behind him." Before moving into the #3 lane, "I looked back, it seemed like [Laramee] has slowed down." "I could see that he wasn't coming up near as quick as he was when I first saw him." "With the distance [Laramee] had, I felt that was ample time to stop." Appellant was aware that "with trucks it takes them a while to stop." Years earlier, he had been a passenger in a fully-loaded tractor-trailer that was going 65 miles per hour when it had to make an emergency stop. Appellant testified, "[I]t took [the driver] . . . probably close to half a mile to get that truck stopped."

11

Appellant maintains that "Laramee's actions were not those of a prudent driver" because he was "likely distracted by a cell phone conversation." During Laramee's deposition, appellant's counsel asked, "[W]hen you got onto the southbound 101, were you on your cell phone?" Laramee replied that he was not on his cell phone. He had a wireless Bluetooth "hands-free" phone in his cab. (Vehicle Code section 23123, subdivision (a) permits the use of a hands-free wireless phone while driving.) Appellant's counsel asked, "Were are [*sic*] you talking" on the "hands-free?" Laramee replied, "Yeah, I was talking." Respondents' counsel interrupted, "Were you actually actively in a call when you got on the freeway, or do you remember?" Laramee replied that he did not remember.

Laramee's testimony does not raise a triable issue of material fact whether a hands-free phone conversation so distracted him that he did not act "as a reasonably careful person would have acted in similar circumstances." (CACI No. 452.) Laramee could not remember whether he had been talking on the phone when he got on the freeway. He was not asked whether he had been on the phone when the black car braked. Even if he had been on the phone at this time, it is speculative whether the distraction from the phone conversation interfered with his ability to safely drive the tractor-trailer. The record contains no evidence of such interference.

*Disposition*

The judgment is affirmed. Respondents are awarded their costs on appeal.

12

CERTIFIED FOR PUBLICATION.


YEGAN, Acting P. J.

We concur:


PERREN, J.


TANGEMAN, J.


13

Thomas P. Anderle, Judge

Superior Court County of Santa Barbara

_____

Law Offices of Erik Harper and Erik Harper for Plaintiff and Appellant.

Wilson, Elser, Moskowitz, Edelman & Dicker and Steven R. Parminter and Min K. Kim, for Defendants and Respondents.