Filed 9/24/24  Rivera v. FSC Corporation CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
### SECOND APPELLATE DISTRICT
### DIVISION FOUR

| | |
|---|---|
| JOSE RIVERA,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>FSC CORPORATION dba IL PASTAIO,<br><br>    Defendant and Respondent. | B333678<br><br>(Los Angeles County Super. Ct. No. 21STCV41041) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Barbara A. Meiers, Judge. Reversed in part and remanded with directions.

Jonny Law, Jonathan D. Roven, Britanie A. Crippen and Annelyse Gomez for Plaintiff and Appellant.

Fisher & Phillips, Megan E. Walker and Frank A. Magnanimo for Defendant and Respondent.

## INTRODUCTION

Plaintiff Jose Rivera sued his former employer, FSC Corporation dba Il Pastaio (Il Pastaio), asserting 17 causes of action, including claims under the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.), claims for assault/battery and intentional infliction of emotional distress, and various wage and hour claims under the Labor Code.[1] After Rivera voluntarily dismissed several causes of action, Il Pastaio moved for summary judgment or, in the alternative, summary adjudication, of the remaining causes of action. The trial court granted summary judgment on the grounds that Rivera's FEHA claims were barred because he failed to exhaust his administrative remedies, and his other claims failed as a matter of law.

For the reasons discussed below, we conclude summary judgment was incorrectly granted with respect to Rivera's harassment claims under FEHA, and his cause of action for intentional infliction of emotional distress. We therefore reverse in part, and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

Il Pastaio is a restaurant in Beverly Hills. Rivera began working there in 2005 as a busser. In 2016, he became a "food expediter," responsible for monitoring the plating of the dishes,

---

1 Rivera also sued, but later dismissed, two well-known restaurateurs, Celestino Drago and Giacomino Drago, who are both involved with Il Pastaio. Despite sharing the same last name, they have no familial relationship to the brothers mentioned below, Giacomo Drago and Gaetano Drago.

and ensuring their presentation and quality met Il Pastaio's standards. Throughout his employment, Rivera reported to Heather Verre, Nina Chua, Felix Rodriguez, and Carolina Drago. Rivera also worked with two brothers, named Giacomo Drago and Gaetano Drago.[2] Giacomo was a busser, and Gaetano was a waiter and cleaned tables.

Rivera testified at his deposition that both Giacomo and Gaetano harassed him by "insult[ing] [him] really badly" and "attack[ing] him verbally[.]" For example, on several occasions, Giacomo called Rivera a "son of a bitch bastard Mexican[,]" and a "shitty Mexican[,]" and told him "a wetback couldn't give an Italian orders." He also called Rivera an "asshole" and a "piece of garbage." Gaetano made similar comments to Rivera, such as: "You're a [expletive] Mexican[,]" "I don't have any idea why my uncle would put you in charge[,]" "[Y]ou're a [expletive] wetback[,] and "You're a Latino[,]" "I'm Italian[.]"

Rivera further testified that he complained to his supervisors about Gaetano's and Giacomo's comments. As described by Rivera, in 2018, on the "first [day]" Gaetano insulted him, Rivera reported it to Carolina Drago. Carolina responded: "Don't take it the wrong way. This is how they – talk in Italy" and that Rivera should "do [his] job and ignore [Gaetano]." Rivera also complained to Heather Verre, Nina Chua, and Felix Rodriguez about the insults, but "they all turned their backs [on him]."

---

2      As several people with the last name of Drago worked at or were associated with the restaurant, we will refer to the brothers by their first names.

Nina Chua spoke to Gaetano, "ask[ing] him to please stop insulting [Rivera] and harassing [him] . . . ." Il Pastaio then transferred Gaetano to the morning shift and, because Gaetano and Rivera no longer worked overlapping shifts, the alleged insults stopped.

Giacomo's offensive remarks, however, continued even after management told him to stop making comments. Rivera complained to his managers again, but it "seemed like they just had enough of [him] having to tell them about this repeatedly." He, therefore, followed his supervisor's instructions to ignore Giacomo until an incident occurred between them in October 2021.

On October 13, 2021, after Rivera returned to work from his meal break, Giacomo started yelling at him and asking where he was. Rivera responded that he was coming back from his meal break, and told Giacomo to stop insulting him and to let him do his job. Giacomo didn't stop insulting him, however. He said Rivera was "garbage or trash[,] a "[expletive] Mexican," that he was "stupid[,]" and that he "didn't know anything[.]" Giacomo then approached Rivera with his finger in Rivera's face, and Rivera took a step back toward the wall with his hands down. Giacomo struck Rivera "really hard with his knee on [Rivera's] right knee." Giacomo then laughed and mocked him.

The managers came over and asked what happened. After Rivera reported the incident to his managers, they called an Uber to take Rivera home because he said he was in pain.

Managers Nina Chua and Felix Rodriguez immediately investigated the reported incident that same day. In addition to taking statements from Rivera and Giacomo, they reviewed surveillance footage of the incident. Chua and Rodriguez directed

Giacomo not to report to work the following day pending further investigation.

Chua then reported the incident to the management team of Il Pastaio and provided her assessment that Giacomo's conduct amounted to violence and was cause for termination. On October 15, 2021, two days after the incident, Il Pastaio terminated Giacomo for misconduct.

Rivera never returned to work after the incident.

On November 4, 2021, Rivera filed a complaint with the Department of Fair Employment and Housing (DFEH). As relevant here, the DFEH complaint alleged that, "on or about October 13, 2021, [Il Pastaio] took the following adverse actions: [¶] "[Rivera] was harassed because of [his] race, ancestry, national origin (includes language restrictions), disability (physical or mental), other, family care or medical leave . . . ."

After obtaining a right-to-sue notice from DFEH, Rivera filed this action. Rivera's complaint initially alleged 17 causes of action. He later voluntarily dismissed his first through third, and tenth through twelfth causes of action, leaving the following claims: (1) harassment under FEHA (fourth cause of action); (2) retaliation under FEHA (fifth cause of action); (3) retaliation under the California Labor Code (sixth cause of action); (4) failure to prevent harassment (seventh cause of action); (5) assault/battery (eighth cause of action); (6) intentional infliction of emotional distress (ninth cause of action); (7) failure to pay all wages (thirteenth cause of action); (8) failure to pay overtime wages (fourteenth cause of action); (9) failure to provide meal and rest periods (fifteenth cause of action); (10) failure to issue accurate itemized wage statements (sixteenth cause of

5

action); and (11) unlawful/unfair business practices (seventeenth cause of action).

Il Pastaio moved for summary judgment, or in the alternative, summary adjudication of these remaining causes of action. Il Pastaio argued Rivera's FEHA claims should fail as a matter of law because Rivera did not produce a right-to-sue notice from DFEH and thus, he failed to exhaust his administrative remedies. It further argued no triable issues of fact existed regarding the remaining causes of action.[3]

Rivera opposed the motion, arguing he exhausted his administrative remedies. He stated he received an immediate right-to-sue notice from DFEH, which he served on Il Pastaio after Il Pastaio filed its motion for summary judgment. Rivera further argued triable issues of material fact existed on the remaining causes of action.[4]

After a hearing (which was not reported), the trial court took the matter under submission, and ordered the parties to file supplemental briefs addressing whether Rivera exhausted his administrative remedies with DFEH based on an issue not raised in the parties' briefs. Specifically, the court ordered the parties to address "the problem demonstrated by the administrative agency

---

3      In its motion, Il Pastaio argued no triable issues of material fact existed regarding the harassment claims against the individual defendants only. It did not address whether triable issues of fact existed on the harassment claim against Il Pastaio. In his opposition to Il Pastaio's motion for summary judgment, Rivera stated he was dismissing the individual defendants.

4      In his opposition, Rivera dismissed the fifth cause of action for retaliation under FEHA and the sixth cause of action for retaliation under the Labor Code.

complaint which on its face charges 'harassment' on a single date – not in keeping with the harassment allegations on which the plaintiff seeks to rely in plaintiff[']s Complaint – i.e. harassment over . . . several years and by several persons."

After reviewing the supplemental briefs, the trial court issued a written order granting Il Pastaio's motion. Regarding the FEHA claims, the trial court found Rivera failed to exhaust his administrative remedies because the administrative complaint alleged harassment on a specific date only, whereas the judicial complaint alleged harassment dating back several years. It further found the Worker's Compensation Exclusivity Act barred Rivera's cause of action for assault/battery against Il Pastaio. With respect to Rivera's claim for intentional infliction of emotional distress (IIED), the court found that, as a matter of law, "a single kick in the knee between two employees" is not "outrageous conduct." Lastly, the trial court found Rivera's wage and hour claims failed as a matter of law because Il Pastaio met its initial burden on summary judgment and, in response, Rivera did not present sufficient admissible evidence to create a material issue of fact.

The court entered judgment in favor of Il Pastaio, and Rivera timely appealed.

## DISCUSSION

### I. Standard of Review

"A party is entitled to summary judgment only if there is no triable issue of material fact and the party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) A defendant moving for summary judgment must show that one or more elements of the plaintiff's cause of action cannot be established or that there is a complete defense. (*Id.*, subd. (p)(2).)

7

If the defendant meets this burden, the burden shifts to the plaintiff to present evidence creating a triable issue of material fact. (*Ibid*.) A triable issue of fact exists if the evidence would allow a reasonable trier of fact to find the fact in favor of the party opposing summary judgment. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.)

"We review the trial court's ruling on a summary judgment motion de novo, liberally construe the evidence in favor of the party opposing the motion, and resolve all doubts concerning the evidence in favor of the opponent. (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460.) We must affirm a summary judgment if it is correct on any of the grounds asserted in the trial court, regardless of the trial court's stated reasons." (*Grebing v. 24 Hour Fitness USA, Inc*. (2015) 234 Cal.App.4th 631, 636-637.)

## II. Fourth Cause of Action for Harassment and Seventh Cause of Action for Failure to Prevent Harassment[5]

### A. Exhaustion of Administrative Remedies

Before filing a civil action alleging FEHA violations, an employee must exhaust his or her administrative remedies by filing with the DFEH a "verified complaint, in writing, that shall state the name and address of the person, employer, labor organization, or employment agency alleged to have committed the unlawful practice complained of, and that shall set forth the particulars thereof and contain other information as may be

---

5    Il Pastaio also argues on appeal that the trial court correctly found Rivera's fifth and sixth causes of action fail as a matter of law. Rivera confirms on appeal that he has abandoned those claims.

required by [the DFEH].” (Gov. Code, § 12960, subd. (c); see also *Rojo v. Kliger* (1990) 52 Cal.3d 65, 83 (*Rojo*) [“exhaustion of the FEHA administrative remedy is a precondition to bringing a civil suit on a statutory cause of action” (italics omitted)].)

In *Rojo*, our Supreme Court explained the purpose of the FEHA exhaustion doctrine: “In cases appropriate for administrative resolution, the exhaustion requirement serves the important policy interests embodied in the act of resolving disputes and eliminating unlawful employment practices by conciliation [citation], as well as the salutory goals of easing the burden on the court system, maximizing the use of administrative agency expertise and capability to order and monitor corrective measures, and providing a more economical and less formal means of resolving the dispute [citation]. By contrast, in those cases appropriate for judicial resolution, as where the facts support a claim for compensatory or punitive damages, the exhaustion requirement may nevertheless lead to settlement and serve to eliminate the unlawful practice or mitigate damages and, in any event, is not an impediment to civil suit, in that the [DFEH’s] practice evidently is to issue a right-to-sue letter [citation] at the employee’s request as a matter of course [citations].” (*Rojo, supra*, 52 Cal.3d at pp. 83-84, fn. omitted.)

To effectuate these purposes, the administrative exhaustion requirement is satisfied if the FEHA claims in the judicial complaint are “‘like and reasonably related to’” those in the DFEH complaint (*Wills v. Superior Court* (2011) 195 Cal.App.4th 143, 154) or “likely to be uncovered in the course of the DFEH investigation.” (*Okoli v. Lockhead Technical Operations Co.* (1995) 36 Cal.App.4th 1607, 1617.)

In analyzing whether Rivera exhausted his administrative remedies under Government Code section 12960, subdivision (c), we first note that, in reality, there was no administrative process to exhaust. That is because Rivera requested and received an immediate right-to-sue notice on the same day he filed his DFEH complaint. (See Cal. Code Regs., tit. 2, § 10005, subd. (a) ["Any person claiming to be aggrieved by an employment practice made unlawful by the FEHA may forgo having the department investigate a complaint and instead obtain an immediate right-to-sue notice"].) In any event, we conclude Rivera exhausted his administrative remedies because the acts of harassment alleged in his judicial complaint would likely be uncovered by an investigation of his administrative complaint. (See *Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 268 ["[W]hat is submitted to the DFEH must not only be construed liberally in favor of plaintiff, it must be construed in light of what might be uncovered by a reasonable investigation"].)

As discussed above, Rivera's DFEH complaint alleged that "on or about October 13, 2021" Rivera was "harassed because of [his] race, ancestry, national origin . . . ." It provided no other dates or any other particulars. An investigation into his complaint, however, would almost certainly uncover the allegations of harassment in 2018 and 2019. For example, an interview with the restaurant managers would reveal that Il Pastaio terminated Giacomo two days after the October 13, 2021 incident for misconduct. If the investigator inquired whether Rivera had any issues with Giacomo previously, assuming truthful responses, the managers would respond that Rivera had complained about Giacomo's allegedly harassing conduct towards him on multiple occasions. Thus, in *this* case, reference to a single

10

date in the DFEH complaint should not result in the dismissal of Rivera's harassment claims, which include allegations of harassment that occurred before the date indicated in the DFEH complaint. The trial court, therefore, erred by granting summary adjudication of Rivera's harassment and failure to prevent harassment claims based on a failure to exhaust administrative remedies.[6]

## B. Statute of Limitations

For the first time on appeal, Il Pastaio alternatively argues Rivera's allegations of harassment dating back to 2018 are time-barred based on the then-applicable one-year statute of limitations.[7] It further argues the continuing violations doctrine

---

6       Il Pastaio's reliance on *Yurick v. Superior Court* (1989) 209 Cal.App.3d 1116 (*Yurick*) is unavailing. There, the Court of Appeal held the plaintiff was barred from bringing an age harassment claim against an individual defendant where the administrative charge alleged only gender discrimination based on unequal pay and named the hospital as the sole discriminating party. (*Id.* at pp. 1122-1123.) Here, Rivera's judicial complaint does not allege new causes of action against unnamed parties. It merely alleges additional incidents of harassment, which would likely be uncovered by an investigation of Rivera's administrative complaint.

7       Prior to January 1, 2020, the limitations period for filing an administrative claim was one year. (See Gov. Code, § 12960, former subd. (d).) "Effective January 1, 2020, the Legislature amended section 12960 to 'enlarge[ ] the time for filing a [DFEH] claim to three years from the date of the challenged conduct.'" (*Guzman v. NBA Automotive, Inc.* (2021) 68 Cal.App.5th 1109, 1116, fn. 7; see Gov. Code, 12960, subd. (e)(5).) The three-year statute of limitations is not retroactive. (See Gov. Code, § 12960,

does not save Rivera's claims. (See *Richards v. CH2M Hill, Inc.* (2001) 26 Cal.4th 798, 823 (*Richards*) [where continuing violations are alleged, a complaint arising out of FEHA is not time barred by the statute of limitations if any act occurred within the limitations period].) Il Pastaio forfeited these arguments, however, by not moving for summary judgment on statute of limitations grounds. (See *Newton v. Clemons* (2003) 110 Cal.App.4th 1, 11 (*Newton*) ["Generally, issues raised for the first time on appeal which were not litigated in the trial court are [forfeited]"].)

In any event, we reject this argument on the merits. Perhaps because this argument was not developed below, the record is not clear regarding the dates of the alleged harassment. Although Rivera testified in his deposition that some of the acts occurred in 2018, he also testified that he complained to managers about ongoing harassment in 2019. And, according to Rivera, although the harassment did not stop, he ignored it until the incident on October 13, 2021.

Il Pastaio argues the continuing violation doctrine is inapplicable because the harassment acquired "permanence" in 2018. (*See Richards, supra*, 26 Cal.4th at p. 802 [the continuing violation doctrine applies when the actions are similar in kind, occur with sufficient frequency, and they have "not acquired a degree of 'permanence' so that employees are on notice that further efforts at informal conciliation with the employer to . . . end harassment would be futile"].) But there is no evidence in the record that Il Pastaio ever made it clear to Rivera

subd. (f)(3) ["This subdivision is not intended to revive claims that have already lapsed"].)

12

that it would not attempt to address his complaints. Thus, Il Pastaio has not met its burden to show the undisputed facts support its statute of limitations affirmative defense. (See *Shiver v. Laramee* (2018) 24 Cal.App.5th 395, 400 [A "'"defendant moving for summary judgment based upon the assertion of an affirmative defense . . . 'has the initial burden to show that undisputed facts support each element of the affirmative defense' . . . ."'"].) We therefore conclude that, on this record, Il Pastaio is not entitled to summary adjudication of Rivera's harassment and failure to prevent harassment claims on statute of limitations grounds.

## III.   Eighth Cause of Action for Assault and Battery

Il Pastaio moved for summary adjudication of Rivera's eighth cause of action on the ground that workers' compensation is the exclusive remedy for the assault and battery he allegedly suffered.

Workers' compensation law contains broadly worded exclusivity provisions. Labor Code section 3600, subdivision (a) provides that "subject to certain particular exceptions and conditions, workers' compensation liability, 'in lieu of any other liability whatsoever' will exist 'against an employer for any injury sustained by his or her employees arising out of and in the course of the employment.'" (*Fermino v. Fedco, Inc*. (1994) 7 Cal.4th 701, 708, quoting Lab. Code, § 3600, subd. (a).) Labor Code section 3601, subdivision (a)(1) establishes an exception to the exclusivity rule permitting a cause of action for assault and battery against an *employee* "[w]hen the injury or death is proximately caused by the willful and unprovoked physical act of aggression of the other employee." But Labor Code section 3601, subdivision (b) "unambiguously prohibits imposing civil liability on an employer

13

for one employee's assault and battery of another."[8] (*Fretland v. County of Humboldt* (1999) 69 Cal.App.4th 1478, 1487.) Courts have recognized, however, that "an employer can be held civilly liable as a joint participant in assaultive conduct committed by its employee pursuant to the doctrine of ratification." (*Id.* at pp. 1489-1490.) "'The failure to discharge an employee who has committed misconduct may be evidence of ratification. [Citation.] The theory of ratification is generally applied where an employer fails to investigate or respond to charges that an employee committed an intentional tort, such as assault or battery.'" (*C.R. v. Tenet Healthcare Corp.* (2009) 169 Cal.App.4th 1094, 1110.)

Rivera contends triable issues of fact exist regarding whether Il Pastaio ratified the tortious conduct. We disagree. It is undisputed Il Pastaio immediately investigated the incident on October 13, 2021, and terminated Giacomo for misconduct two days later. Rivera argues Giacomo is now employed at another restaurant run or owned by the same individuals that run Il Pastaio. But even if true, another company's hiring decisions have no bearing on whether *Il Pastaio* ratified the tortious conduct. Il Pastaio indisputably rejected the tortious conduct by immediately terminating Giacomo, and he has never returned (or been invited to return) to Il Pastaio.

Rivera also relies on his deposition testimony that Giacomo bumped into him with his shoulder on three occasions and he

---

8    Labor Code section 3601, subdivision (b) provides: "In no event, either by legal action or by agreement whether entered into by the other employee or on his or her behalf, shall the employer be held liable, directly or indirectly, for damages awarded against, or for a liability incurred by the other employee under paragraph (1) or (2) of subdivision (a)."

14

complained to his supervisor about these incidents. The testimony is not further developed, however. There is no testimony establishing Il Pastaio failed to investigate or respond to Rivera's complaints of Giacomo bumping Rivera with his shoulder. Accordingly, Rivera failed to present evidence creating a triable issue of fact regarding whether Il Pastaio ratified Giacomo's alleged tortious conduct. The trial court, therefore, properly granted summary adjudication of Rivera's assault and battery claim based on the workers' compensation exclusivity doctrine.

## IV.    Ninth Cause of Action for IIED

"The elements of the tort of intentional infliction of emotional distress are: "'(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. . . .'" Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community.'" (*Christensen v. Superior Court* (1991) 54 Cal.3d 868, 903.)

Il Pastaio moved for summary adjudication of Rivera's IIED claim on the ground that the "act of striking Rivera in the knee did not amount to 'extreme and outrageous conduct'" and thus, Rivera cannot establish all elements of his claim.[9] The trial court

---

9      For the first time on appeal, Il Pastaio argues Rivera also failed to show he suffered severe emotional distress. We deem this argument forfeited. (See *Newton, supra,* 110 Cal.App.4th at p. 11.)

15

agreed, characterizing the incident on October 13, 2021 as a "[m]inor skirmish[ ]" that, as a matter of law, is not "the type of conduct that 'no civilized society should be expected to endure.'" We are unconvinced.

It is undisputed Giacomo intentionally struck Rivera in the knee after yelling at him while they were working. And, based on Rivera's deposition testimony, this intentional act of physical aggression was motivated by discriminatory animus based on ethnicity. We acknowledge that "[o]rdinarily mere insulting language, without more, does not constitute outrageous conduct." (*Kiseskey v. Carpenters' Trust for So. California* (1983) 144 Cal.App.3d 222, 230.) But here, we have more (i.e., alleged disparaging comments motivated by anti-Latino biases combined with a physical assault). If proven, a jury could reasonably find that Giacomo's conduct was extreme and outrageous. The trial court erred by concluding otherwise.

## V. Wage and Hour Claims: Thirteenth Through Fifteenth Causes of Action

### A. Failure to Pay All Wages (Thirteenth Cause of Action)

Rivera contends the trial court erred by granting summary adjudication of his claim for failure to pay all wages because issues of material fact exist regarding whether he worked off the clock. For a claim for failure to pay wages based on off-the-clock work, however, "liability is contingent on proof [the employer] knew or should have known off-the-clock work was occurring." (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1051 (*Brinker*).) That is because when employees are clocked out, there is a "presumption they are doing no work . . . ." (*Ibid.*) Rivera presents no evidence that Il Pastaio knew, or

16

should have known, he was working off the clock on occasions other than the times he allegedly reported the issue to management.

Rivera testified at his deposition that throughout his employment, there were times he would work about 30 minutes before clocking in, and other times when he would clock out and continue working. He complained to one of the managers, Nina Chua, about "five times" that he had worked off the clock. Chua responded that "she was going to take care of it" and that he should not work off the clock. It was Rivera's understanding that Chua put the time he allegedly worked off the clock back into the system for him, and he was ultimately paid. Thus, despite the restaurant's policy expressly prohibiting off-the-clock work, when reported, Rivera's timesheets were corrected and he was paid accordingly. Il Pastaio would have no reason to know that, despite management's directive not to work off the clock (and in violation of company policy), Rivera continued to do so and did not report it to management. The trial court, therefore, properly granted summary adjudication of Rivera's claim for failure to pay all wages based on off-the-clock work.

### B. Failure to Pay Overtime Wages (Fourteenth Cause of Action)

"In order to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record." (See *City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286-287.) Rivera has not done so with respect to his fourteenth cause of action.

Rivera's opening brief on appeal contains no argument that Il Pastaio failed to pay overtime wages. In his reply brief, Rivera again fails to provide any argument or citations to the record

17

regarding overtime wages, claiming only that he preserved his argument on appeal because his opening brief includes a header stating summary judgment was improperly granted on the thirteenth through sixteenth causes of action. We disagree, and therefore deem this issue forfeited. (See *Sporn v. Home Depot USA, Inc.* (2005) 126 Cal.App.4th 1294, 1303 ["Contentions on appeal are waived by a party who fails to support them with reasoned argument and citations to authority"].) To the extent this cause of action is premised on the same arguments made in support of Rivera's claim for failure to pay wages, we affirm the grant of summary adjudication of this claim for the same reasons we affirm summary adjudication of Rivera's thirteenth cause of action for failure to pay wages.

## C. Failure to Provide Meal and Rest Periods (Fifteenth Cause of Action)

On appeal, Rivera's argument regarding missed meal and rest breaks is limited to the following: "Appellant is clear that he did work through meal and rest breaks. [Citation.] Appellant provided clear evidence via his deposition that he indeed missed those breaks." Whether Rivera missed his meal breaks, however, is not the standard for determining whether Il Pastaio is liable for failing to *provide* meal and rest breaks under Labor Code sections 512 and 226.7, subdivision (a).[10]

Our Supreme Court held that an employer's duty concerning meal breaks is "to provide a meal period to its employees." (*Brinker, supra,* 53 Cal.4th at p. 1040.) "The

---

10    Labor Code sections 512 and 226.7 obligate employers to afford their nonexempt employees meal periods and rest periods during the workday.

employer satisfies this obligation if it relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so." (*Ibid.*) "[T]he employer is not obligated to police meal breaks and ensure no work thereafter is performed. Bona fide relief from duty and the relinquishing of control satisfies the employer's obligations, and work by a relieved employee during a meal break does not thereby place the employer in violation of its obligations and create liability . . . ." (*Id.* at pp. 1040-1041.) Similar principles apply to rest breaks. (See *David v. Queen of Valley Medical Center* (2020) 51 Cal.App.5th 653, 661.)

Il Pastaio provided meal and rest breaks as required by law. Per restaurant policy, employees were provided an uninterrupted meal period of at least 30 minutes within the first five hours of their shift, and a 10-minute rest break for every "four [ ] hours of work or major portion thereof." It is also Il Pastaio's policy that employees who miss a meal or rest break must complete a form identifying the type of break missed and the reason for not taking a timely break so that it can be determined if premium pay is owed to the employee for a missed break. At his deposition, Rivera admitted he was generally in charge of setting when both he and the other employees would take a break: "I would send one of my coworkers and then whenever he would return, I would send the next one." According to Rivera, however, "there were instances where there was just too much work, and . . . [he] just couldn't eat." But Rivera admitted that when he told a manager he skipped a break, he

19

was told "[Il Pastaio] would pay for it."[11] Rivera also testified there were times his supervisor instructed him to take a meal break, and the supervisor covered for him while he took his break.

This evidence establishes Il Pastaio provided breaks as required by law. Rivera did not testify he was prevented, impeded, or discouraged from taking breaks—at most, his testimony demonstrates he chose not to take a break based on his belief the restaurant was too busy. An employee's decision not to take a break (and not report it), however, is insufficient to create a triable issue of fact regarding an employer's alleged failure to provide breaks under *Brinker*.

## VI. Derivative Causes of Action for Failure to Provide Accurate Wage Statements (Sixteenth Cause of Action) and Unlawful/Unfair Business Practices (Seventeenth Cause of Action)

Rivera's claims for failure to provide accurate wage statements under Labor Code section 226, and for violation of Business and Professions Code § 17200 (UCL) are premised entirely on his allegations regarding off-the-clock work and missed meal and rest periods. Because, as discussed above, the underlying claims fail, the derivative claims also fail. (See, e.g., *Javorsky v. Western Athletic Clubs, Inc*. (2015) 242 Cal.App.4th 1386, 1408 [summarily adjudicating UCL claim where underlying claim for statutory violation was also summarily adjudicated].)

---

11      Rivera's paystubs show he was paid a "Meal/Rest Penalty" at his hourly rate on two occasions.

## DISPOSITION

The judgment is reversed. The trial court is directed to vacate its order granting Il Pastaio's motion for summary judgment and enter a new order: granting summary adjudication of the fifth and sixth causes of action (retaliation under FEHA and the Labor Code), the eighth cause of action (assault and battery), and the thirteenth through seventeenth causes of action (wage-and-hour claims and UCL), and denying summary adjudication of the fourth and seventh causes of action (FEHA harassment and failure to prevent harassment claims) and the ninth cause of action (IIED). The parties are to bear their own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

CURREY, P. J.

We concur:

MORI, J.

ZUKIN, J.

21